

**KUSHNIRSKY GERBER PLLC**
27 UNION SQUARE WEST, SUITE 301
NEW YORK, NY 10003
kgfirm.com

O: (212) 882-1320
F: (917) 398-1487

September 27, 2024

<u>**Via ECF**</u>
The Honorable Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Menzel v. Roadget Bus. Pte. Ltd. et al.*, 1:24-cv-860 – Update on Outstanding Discovery Issues

Judge Cave,

Plaintiff Christina Menzel ("Plaintiff") and Defendants Roadget Business Pte. Ltd., Zoetop Business Co., Ltd., Shein US Services, LLC, Fashion Direct Corp., Shein Distribution Corporation, and Shein Technology LLC (together, "Defendants") jointly file this letter pursuant to the Court's Aug. 29, 2024 Order in advance of the Oct. 1, 2024 conference. *See* ECF No. 69.

<u>Plaintiff's Position:</u>

As discussed at the August 29, 2024 conference, Defendants' August 27, 2024 document production was completely deficient. The production was missing entire categories of relevant documents and many of the documents produced were illegible. On September 6, 2024, Plaintiff served Defendants with a second deficiency letter that outlined these various issues. On September 16, 2024, Defendants served a second production consisting of thirty-four pages of documents, which did not cure any of the issues raised in Plaintiff's letter. The Parties had a meet-and-confer on September 18, 2024 to discuss Plaintiff's letter. Below is a summary of the outstanding issues.

1) <u>Defendants represent that numerous critical documents do not exist</u>

Plaintiff requested Defendants produce all documents and communications related to the 138 alleged infringing products, including how they were designed, created, procured, obtained and sold by Defendants. In Defendants' August 27, 2024 production, Defendants produced documents showing information related to 31 of the 138 alleged SKUs.[1] Defendants represented that this information did not exist for the other 107 infringing products. This representation is very troubling. Regardless, even if Defendants did produce *just* these same documents for the remaining 107 alleged infringing products, there are still many other relevant documents that Defendants need to produce related to these products and processes, including how these infringing designs

---

[1] Plaintiff notified Defendants that it appears that only documents for 29 – not 31 – alleged SKUs were produced, as SHEIN2323 and SHEIN2325 appear to be duplicates and SHEIN2345 and SHEIN2348 appear to be duplicates. On September 18, 2024 Defendants represented that they will look into this and provide Plaintiff with an update, but as of Plaintiff's drafting of this letter, Defendants have yet to do so.

and products were created, the design files of these infringing designs, internal communications regarding these products, how these products were uploaded on to the three websites at issue, and Defendants' marketing of these infringing products, among other things. Plaintiff seeks the Court's assistance in assuring that all of these relevant documents are produced.

Additionally, Plaintiff requested that Defendants produce the various communications Defendants had with Plaintiff over the last five years, as well as internal documents and communications related to Defendants' responses to each one of Plaintiff's notifications of infringement. Defendants said they will search for these but that they are not sure if they exist. It is very concerning if Defendants do not have these communications. Plaintiff seeks the Court's assistance in assuring that all of these relevant documents are produced.

### 2) Defendants refuse to produce documents regarding Defendants' revenues

Plaintiff initially requested that Defendants produce documents related to Defendants' assets and revenues (Request for Production No. 56). Defendants objected. Plaintiff offered as a compromise that Defendants stipulate to the global revenues earned on the shein.com, emmacloth.com, and romwe.com websites for the years during which the infringing products were sold. Defendants initially agreed to produce a stipulation as to U.S. revenues earned on each of Defendants' three websites at issue, but now have reversed course and refuse to do so. Plaintiff requests that the Court order Defendants to produce this information. This issue is ripe for the Court's review.

### 3) Defendants have agreed to produce certain documents but have not specified when they will be producing these

At the Parties' meet and confer, Defendants agreed to produce (and reproduce) various documents, but did not specify by what date they would do so. Plaintiff asks the Court to set a date by which Defendants must produce (or reproduce) the following: (1) global sales data for all infringing products;[2] (2) 31 product-specific "vendor portal" screenshots (SHEIN2318-2348);[3] (3) Documents regarding the corporate relationship between and among all Defendants, including but not limited to licensing and distribution agreements and corporate documents related to the ownership and operation of the websites at issue; and (4) various documents produced by Defendants that do not show the SKU number of the infringing product to which they correspond.[4]

### 4) Defendants have represented that they will look into the following discovery topics

At the meet and confer, the Parties discussed additional documents that Plaintiff has requested. Defendants represented that they would look into these and potentially supplement their production. Plaintiff asks the Court to set a date by which Defendants shall supplement their production. However, Plaintiff is doubtful that Defendants' supplemental production will be sufficient, and Plaintiff reserves the right to object to the sufficiency of Defendants' supplemental production regarding these following categories in the future: (1) Defendants' use of "computer-

---

[2] Defendants only produced sales data for 100,000 transactions but acknowledged that there are more.
[3] Defendants acknowledged that these were produced in poor quality and were not legible.
[4] The bates numbers of these documents were identified in Plaintiff's September 6, 2024 Deficiency Letter.

augmented" design (including artificial intelligence, photoshop, and/or other software) to create designs and products;[5] (2) documents that relate to Plaintiff's predicate act allegations, including how the alleged infringing product photos were created, the location of the servers on which these photos are stored, and the mechanisms by which Defendants' websites publish and display these infringing product photos; (3) additional documents related to Defendants' product screening, including all conduct taken by Defendants' employees (including those in the US/U.S. Audit Team) related to these processes, all materials used to conduct these reviews, including the "IP library," any guidance/manuals given to employees when conducting these product reviews, and any communications regarding same; (4) policies that governed Defendants' responses to Plaintiff's notices of infringement and policies regarding licensing intellectual property from artists and designers like Plaintiff. Lastly, Plaintiff has requested access to all portals/databases that were used by Defendants and/or vendors, suppliers, manufacturers or other third parties in the creation/design/procurement of the alleged infringing products. It is unclear at this time what Defendants' position is regarding this request.

5) <u>Issues regarding Defendants' notice of Plaintiff's deposition</u>

On September 13, 2024, without asking about Plaintiff's availability in advance, Defendants noticed Plaintiff's deposition to take place on October 2, 2024. After Plaintiff objected to her deposition taking place on that day due to Defendants' failure to produce substantive discovery thus far, the myriad outstanding discovery issues in this case, and Plaintiff's counsel's unavailability on that date due to Rosh Hashanah, Defendants refused to engage with Plaintiff, instead threatening that if Plaintiff does not appear on that date, Defendants "will take a notice of non-appearance and move for terminating sanctions." Plaintiff is not, and cannot, object to her deposition being taken in this case. Plaintiff's position is merely that it is premature for either party to take depositions due to the number of outstanding written discovery issues in this case and because Plaintiff will be filing an amended complaint at the end of October. Plaintiff seeks the Court's assistance regarding this matter.

<u>Defendants' Position:</u>

Plaintiff's position is overstated and misleading. Defendants have produced responsive documents, including transaction records (which Defendants will supplement), supplier agreements, a purchase order spreadsheet, customer reviews, product photos, supplier communications with Shein regarding the posting of products on the website, and other responsive documents. On September 16, 2024, Defendants produced thirty-five documents, including several large native Excel files, so Plaintiff's characterization of thirty-four pages is misleading. The truth is that Defendants have produced thousands of pages of documents, and plan to supplement their production.[6]

---

[5] For example, Defendants represented that the "Satin Rose" infringing design was designed "in-house" whereas the other alleged infringing designs in Exhibit A to Plaintiff's September 6, 2024 Deficiency Letter were designed by suppliers. Plaintiff requested that Defendants produce documents that actually support these representations.

[6] Defendants will supplement their document production but will need more time to complete it. Since October 1-7, 2024 is China's national "Golden Week" or "National Day" holiday, Defendants will not be working. Respectfully, Defendants would request that a deadline to complete their production of November 1, 2024.

1)    <u>Defendants cannot produce documents that do not exist</u>.It is unclear which Request for Production of Documents Plaintiff is seeking to compel. Unlike for point number 2 where Plaintiff identifies Request for Production No. 56, here Plaintiff is arguing that Defendants should generally produce nebulous categories of documents. Defendants can only produce documents that exist. Plaintiff's argument is based on a false premise that various documents exist. For example, Plaintiff incorrectly assumes that Defendants are withholding "vendor portal upload" documents for 107 alleged infringing products, but Defendants' counsel explained that no documents exist. Defendants are not withholding responsive documents, so there is nothing for the Court to assist with.

With respect to communications Defendants had with Plaintiff over the last five years, as well as internal documents and communications related to Defendants' responses to each one of Plaintiff's notifications of infringement, Defendants have searched for these and will continue to search for and produce non-privileged communications prior to November 1, 2024 but have not located any as of this letter. If these the requested documents do not exist, there is nothing to compel.

2)    <u>Defendants' revenues are non-responsive, irrelevant, and prejudicial</u>. Defendants' revenue has no bearing on this case. *See Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 814 (S.D.N.Y. 2018) (any potential relevance of BuzzFeed's financial data would be substantially outweighed by the delay and waste of time the presentation of such evidence would cause and the prejudice BuzzFeed would suffer as a result of disclosing private financial data."). Although Plaintiff argues that Defendants' financial data is relevant to the deterrence factor for statutory damages, the district court in *Mango* explained that "[i]n most cases, calculating statutory damages as a multiple of a reasonable licensing fee accomplishes the necessary deterrence." *Id.*

Plaintiff's request for Defendants to disclose their revenues is harassing, unnecessary, and irrelevant. There is sufficient information in the public domain regarding Defendants' size, and Plaintiff is entitled to ask questions at a Rule 30(b)(6) deposition, but Plaintiff is not entitled to probe into Defendants' financial data of the entire worldwide in this copyright case.

3)    <u>Defendants will complete their production by November 1, 2024</u>. Defendants have produced documents and will complete their production by November 1, 2024. To be clear, Defendants have produced partial global sales data for the alleged infringing products and have agreed to supplement. For "vendor portal" screenshots, Defendants already produced them but agreed to re-produce them with higher image resolution. Defendants intend to produce corporate documents, but not documents regarding the relationship between and among all Defendants. There is no reason for Plaintiff to seek corporate relationship documents in this case when all Defendants would be jointly and severally liable for copyright infringement. *See Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. 1988) ("Where two or more persons join in or contribute to a single infringement, they are all jointly and severally liable but in such circumstances in a single infringement action there is but a single set of statutory damages; ... the Copyright Act allows only a single recovery for a single sale."). The nature of Defendants' corporate relationship is highly confidential and totally irrelevant to this case. Finally, for various documents that do not show the SKU number of the infringing product to which they correspond, Defendants have agreed to provide an interrogatory response or other written confirmation to

4

resolve this issue.

4)    <u>Defendants will produce responsive non-privileged documents</u>. First, Plaintiff contends that Defendants use "computer-augmented" design (including artificial intelligence, photoshop, and/or other software) to create designs and products. Defendants have explained that they do not use artificial intelligence to create designs, so naturally no such responsive documents exist. Defendants have also explained that they have not located documents reflecting the development "in-house" designs of accused products in this matter were created. It is unclear what additional documents Plaintiff is requesting, and why Plaintiff cannot simply serve interrogatories or ask questions of a Rule 30(b)(6) witness. Second, Plaintiff seeks documents to support its predicate act allegations, including how the alleged infringing product photos were created, the location of the servers on which these photos are stored, and the mechanisms by which Defendants' websites publish and display these infringing product photos. Defendants have produced responsive documents and offered to confer with Plaintiff to narrow the scope and try to understand "the mechanisms by which Defendants' website publish and display." Third, Plaintiff appears to be fishing for "additional documents" related to Defendants' product screening, including all conduct taken by Defendants' employees (including those in the US/U.S. Audit Team) related to these processes, all materials used to conduct these reviews, including the "IP library," any guidance/manuals given to employees when conducting these product reviews, and any communications regarding same. Defendants have produced documentation describing the specific product screening conduct that occurred for each accused product to the extent those records exist. Defendants have also produced policy documents describing the product review process generally. Plaintiff does not like what she sees, but the documents are what they are, and any documents or communications following a notice of infringement are clearly privileged. Fourth, Defendants have produced punishment policies and non-infringement policies. To the extent Plaintiff is requesting documents regarding additional "policies," they are not formally documented. Fifth and finally, Plaintiff's request access to Defendants' portal. Defendants object. To the extent Plaintiff is requesting access to the live "portal," Defendants cannot agree to give Plaintiff unsupervised access to inspect Defendants' portal. To the extent Plaintiff is requesting Defendants to engineer an offline version of its online system architecture, Defendants cannot agree to perform this engineering task to create something new. There is no basis for allowing this type of request under the Federal Rules of Civil Procedure. Furthermore, Defendants' portal is highly proprietary and confidential. Defendants' suppliers are not comparable to third-party sellers on Amazon or other marketplace websites where anyone sign up and get access. Defendants are willing to provide briefing on this issue, if needed.

5)    <u>Plaintiff's deposition should proceed</u>. Defendants are willing to entertain a convenient date for Plaintiff and Plaintiff's counsel, but no alternative dates have been provided. Pursuant to FRCP 26(d)(3), the Plaintiff's deposition must proceed, but Defendants are willing to conduct it on an alternative date. Unfortunately, Plaintiff's counsel is refusing to provide other dates, has presumably not asked his client for her availability, and will not commit to producing Plaintiff for a remote deposition. Any remaining deficiencies in Defendants' document production have no bearing on *Plaintiff's* ability to sit for her deposition. Plaintiff's document production appears to be substantially complete, and if it isn't, Defendants are entitled to choose whether they want to proceed with their noticed depositions, just as Plaintiff is entitled to delay Defendants' deposition until she believes Defendants' production is complete.

Respectfully,

Andrew Gerber
Vanessa Sorrentino
KUSHNIRSKY GERBER PLLC
27 Union Square West, Suite 301
New York, New York 10003
(212) 882-1320
andrew@kgfirm.com
vanessa@kgfirm.com
*Attorneys for Plaintiff Christina Menzel*

Scott P. Shaw
MERCHANT & GOULD P.C.
8383 Wilshire Blvd., Ste. 935
Beverly Hills, CA 90211
(949) 330-0202
SShaw@Merchantgould.com
*Attorney for Defendants*