```
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
------------------------------:

CHRISTINA MENZEL,               : Case No.: 24-cv-0860

                   Plaintiff, :

     v.                         :

ROADGET BUSINESS Pte. Ltd.,     :

et al.,                         : New York, New York

                   Defendant. : October 1, 2024

------------------------------:
```

### TRANSCRIPT OF STATUS CONFERENCE HEARING

### BEFORE THE HONORABLE SARAH CAVE

### UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | KISHNIRSKY GERBER PLLC |
| | BY:  Andrew I. Gerber, Esq. |
| | Vanessa Sorrentino, Esq. |
| | 27 Union Square West |
| | New York, New York 10003 |
| | |
| For Defendant: | MERCHANT & GOULD P.C. |
| | BY:  Scott P. Shaw, Esq. |
| | 8383 Wilshire Boulevard |
| | Beverly Hills, California 90211 |

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              THE COURT:  Good morning.  This is
 2   Magistrate Judge Cave.  We're here for a conference
 3   in Menzel v. Roadget; case number: 24-cv-860.
 4              May I have the appearances starting with
 5   plaintiff's counsel, please.
 6              MR. GERBER:  Good morning, Your Honor.
 7   This is Andrew Gerber, counsel for plaintiff.
 8              THE COURT:  All right.  Good morning.
 9              MS. SORRENTINO:  Good morning, Your Honor.
10   This is Vanessa Sorrentino on behalf of plaintiff.
11              THE COURT:  All right.  Good morning.
12              MR. SHAW:  Good morning, Your Honor.  Scott
13   Shaw on behalf of defendants.
14              THE COURT:  Okay.  Good morning.
15              All right.  So we're here to check in on
16   the status of discovery.  I have before me the
17   parties' letter at ECF Number 72 that was filed on
18   September 27th.  So let's start with some of the
19   documents related to the alleged infringing products
20   that are discussed on the first page of the letter.
21              So, Mr. Gerber or Ms. Sorrentino, could you
22   talk a little bit about what you have received as to
23   the documents concerning the infringing products
24   that you were looking for and what you believe is
25   still missing.
```

1          MR. GERBER:  Yes, Your Honor.  This is

2    Andrew Gerber.

3          We're still missing, as you noted in the

4    letter, a huge amount of documents on this.  So

5    there's 138 infringing products at issue.  We're

6    missing documents relating to 107 of the 138.

7    Nothing at all from those 107.

8          These products were created somehow.  They

9    were sourced somehow.  We know nothing about how

10   they were designed, who designed them.  Were they

11   designed by defendants?  Were they sourced from

12   third-party suppliers?

13         A lot of these were apparently Photoshopped

14   either by hand or using AI.  We don't have any of

15   that information, and we have allegations in the

16   complaint about use of AI in modifying the images.

17         So, yeah, at this point, we are just

18   missing all documents related to the vast majority

19   of the products at issue.

20         THE COURT:  Okay.

21         Mr. Shaw?

22         MR. SHAW:  I mean, I've asked my client for

23   the documents that they have.  And at the time,

24   whatever products that would have been created

25   in-house, my understanding is the documents were not

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1   kept in the ordinary course of business and don't
 2   exist.
 3             THE COURT:  Okay.
 4             MR. SHAW:  So, you know, I mean, we're
 5   continuing to look -- my clients -- continuing to
 6   search and ask people, but it's not that I'm
 7   withholding any documents.
 8             THE COURT:  Okay.
 9             MR. SHAW:  I think that Mr. Gerber has
10   speculated with respect to -- something with respect
11   to AI.  I suppose what I could try to talk to my
12   client about, or we could talk about today is, you
13   know, to the extent documents would have existed and
14   we can find out the program that the documents --
15   or, sorry, that the designs would have been created
16   on, we could, perhaps, provide some information
17   about those programs.  For example, like Photoshop,
18   if that program was used, we could try to
19   investigate.
20             THE COURT:  Okay.
21             MR. SHAW:  But it's not something that I
22   have, that I can produce, that we're withholding.
23             THE COURT:  Okay.
24             Mr. Gerber, have you served interrogatories
25   with respect to these issues as well?
```

```
 1              So, obviously, you know, Mr. Shaw can't
 2    produce documents that don't exist, and, you know,
 3    there may be inferences to be drawn from that or
 4    not.  But have you served interrogatories that might
 5    get at answering the question about whether AI was
 6    used or how the products were designed that Mr. Shaw
 7    could in consultation with his client at least get
 8    answers for you?
 9              MR. GERBER:  Yeah.  Well, Your Honor, we
10    served the initial interrogatories that comply with
11    the Southern District's rules that were fairly
12    limited.  You know, we can serve additional ones.
13              But the issue really is about just figuring
14    out how these were created.  If it wasn't AI, it was
15    clearly Photoshopped.  As shown in the complaint,
16    there's a composite image from a number of my
17    client's original works that was somehow fused
18    together.  It was done either using artificial
19    intelligence or someone sat in front of a computer
20    and used Photoshop and did it.  Either way, there's
21    going to be documentation of that.  There's going to
22    be files that were saved.  And we'd like to see how
23    that was done and who did it and what their process
24    was and why they did it.  And there's --
25              THE COURT:  Why don't we just save this for
```

1    the deposition if Mr. Shaw is saying he doesn't

2    have -- his client doesn't have documents.

3         Obviously, you can explore that and test it

4    and get a representation about it under oath, but

5    we're, sort of, spinning our wheels here on this

6    point.  You know, Mr. Shaw, as an officer of the

7    Court is representing he's asked the client, but the

8    client didn't keep those documents, so we need to

9    move on and find out what our other options are.

10        MR. GERBER:  Your Honor, so apart from just

11   this, the AI and the Photoshop issue, as to 107 of

12   the 138 products, we have no documents at all.  And

13   so, you know, I'm willing to give -- and Mr. Shaw,

14   if I understand correctly, has represented that he's

15   still talking to his client and have him look for

16   more documents.

17        THE COURT:  Right.

18        MR. GERBER:  These requests were served in

19   May.  We're happy to give defendants more time to

20   find these if they need it, but, you know, I'm

21   reluctant to move ahead with depositions until we

22   have any documents at all as to the vast majority of

23   these products.  We need the documents to question

24   the witness.

25        THE COURT:  If they don't exist,

```
 1    Mr. Gerber, what are we going to do?  We can't wait
 2    around forever, hoping that Mr. Shaw's client might
 3    find a document.
 4          Now, you know, the risk that he runs is he
 5    produces his document and they find documents after
 6    the deposition, his client may have to sit down
 7    again and, you know, we might have to reopen the
 8    deposition.  But, you know, have a cutoff, a fact
 9    discovery cutoff of November 27th.  So it's up to
10    you, but we need to move this forward.
11          MR. GERBER:  I defer to Your Honor.  I will
12    note that we have several other cases pending
13    against these defendants on behalf of different
14    plaintiffs --
15          THE COURT:  Right.
16          MR. GERBER:  -- have faced the same exact
17    issue.  And in those cases, defense have been
18    ordered to produce these documents.  And lo and
19    behold, after being ordered to do so, they suddenly
20    are able to find these documents.
21          THE COURT:  Well, what did you do?  Move --
22          MR. SHAW:  That's not true.
23          THE COURT:  Well, yeah, did you move to
24    compel or what?
25          MR. GERBER:  We did.  In fact, in one case,
```

1    in *Keller* before Judge Netburn, we did move to
2    compel and actually were granted sanctions in that
3    case.  So we've gone through this.  And so I
4    understand what Your Honor is saying.  It's just,
5    we've been through this before with these exact same
6    defendants in recent weeks and have had the same
7    thing said, and then have had documents produced
8    after they've been ordered to do so and have been
9    sanctioned for failure to do so.
10            THE COURT:  All right.  Well, I don't have
11    those orders before me, and I don't have a motion to
12    compel.  And I really don't want to have to decide a
13    motion to compel because it's going to have -- that
14    will take time and will only lead to further delay,
15    and I really want to move you forward to deposition.
16            So, Mr. Shaw, what's going to happen here
17    with these documents?  If I order you to produce
18    them, are they miraculously going to show up?
19            MR. SHAW:  I think what -- we're talking a
20    little bit apples and oranges.  I am not aware of
21    another case where there's an allegation that my
22    client actually created the designs.  The other
23    cases Mr. Gerber is referring to are cases where
24    third parties had created and uploaded products to
25    the SHEIN website.

AMM TRANSCRIPTION SERVICE  631.334.1445

1          So what we're talking about now, as I

2    understand it, was the speculation or allegations

3    that there was potentially some AI or Photoshop

4    program used to create certain designs.  And I've

5    asked my client for those documents to the extent

6    they exist, and I haven't received any, and my

7    understanding is they didn't (audio distortion).

8          So, you know, with respect to the other

9    types of documents, I mean, we've gone through a

10   list of many documents that we have produced.  I did

11   note that there was an error in the transactional

12   data that I produced to Mr. Gerber.  We conferred

13   about it.  There was a cutoff of the data, and it

14   only produced the first 100,000 transactions, so

15   I've asked my client to rerun that.

16          THE COURT:  Okay.

17          MR. SHAW:  The problem I'm having this

18   particular week is, it's the national holiday week

19   from China.  It's, like, national -- they call it,

20   like, National Week or Golden Week.  So I know we're

21   trying to move quickly.  Just my hands are a little

22   tied because pretty much all the business people in

23   China are trying to take off this week or are off

24   this week.

25          But I, like Mr. Gerber, would like to

```
 1    have -- and like the Court, I would like to have the
 2    issues resolved without a motion to compel.  There
 3    were certainly different issues and circumstances in
 4    those cases, but, you know -- and I don't want to
 5    ask for too much time.  And I don't want to delay it
 6    either, but I would like maybe, you know, before we
 7    move forward to have -- you know, give us another
 8    chance to try to get the documents that we at least
 9    know that are not complete, like, for example, the
10    transaction record, and get those over to
11    Mr. Gerber.  And then if he wants to take a
12    deposition, that's fine.
13            And then maybe, like, the end of next week,
14    schedule one more call to see if we're making better
15    progress.  And if we need more time for discovery
16    and for depositions, like, I'm willing to do it.
17    I'm willing to do whatever we can do to try to
18    resolve it, to not -- and Mr. Gerber has been very
19    eager to get a motion to compel on file, I'm not.  I
20    would like to just try to get it resolved.  And I
21    just apologize for any delay on our end.
22            THE COURT:  Yeah.  I mean --
23            MR. GERBER:  If I may, Your Honor --
24            THE COURT:  Let me just say that filing a
25    motion to compel just brings everything to a
```

AMM TRANSCRIPTION SERVICE  631.334.1445

1   screeching halt because then I have to look at the

2   briefing, and it takes at least three weeks to get

3   the briefs in and then for me to decide it, so then

4   you lose a month by filing a motion to compel.

5           I will say, Mr. Shaw, it is odd to me that,

6   if there are 138 products, that you have no

7   documents about 107 of those.  I realize there may

8   not be a document that says we used AI to create

9   this, but it seems odd to me that for 107 products,

10  there's nothing about how those were designed and

11  created.  It's just -- it's odd to me.

12          And, you know, if your client doesn't have

13  documents, that may be the case, but you are also

14  then looking at spoliation and adverse inferences

15  from that.  So, you know, potentially.  I'm not

16  ruling on that.  I'm just -- obviously, you know,

17  that's the risk of your client saying that they

18  don't have any documents about key issues in the

19  case.  I know you're aware of that.

20          MR. SHAW:  Yes.  Understood.

21          THE COURT:  Okay.

22          Mr. Gerber, sorry, you wanted to add

23  something?

24          MR. GERBER:  Yes.  Thank you, Your Honor.

25          Just to respond, the first thing I said on

```
 1   this call was, we're willing to give defendants more
 2   time to, you know, avoid motion practice and let
 3   them have a chance to search and make sure they get
 4   everything.  I'm fully on board with doing that.
 5   And as Your Honor noted, and just to be clear, we're
 6   not just talking about AI and Photoshop documents.
 7   Any documents about the sourcing creation.  If these
 8   were sourced, they must have gotten them somewhere.
 9           Anything.  We have nothing on 107.  And so
10   all I'm asking is for really any documents about
11   those 107 products.  And if it's Golden Week in
12   China and it's, you know, Jewish holiday week here,
13   and next week if defendants need more time, you
14   know, I'm fine doing that, if the Court is on board,
15   and avoiding motion practice.
16           THE COURT:  Okay.  Well, here's --
17           MR. SHAW:  Yeah, I agree.  I agree with
18   that.
19           THE COURT:  Okay.
20           MR. SHAW:  More time would be very helpful
21   for both parties.
22           THE COURT:  All right.  Well, we have some
23   other categories to talk about, but we'll talk about
24   deadlines, sort of, when we get to the end.  Let's
25   talk about the universe of types of documents that
```

1    are in dispute, and then we'll talk about setting a

2    deadline for giving the defendants, kind of, one

3    last chance to look for these.  And then, you know,

4    after that, sort of, all bets are off and we're

5    moving forward.

6          So another category concerns revenues,

7    Mr. Gerber.  Tell me what it is you're looking for

8    and why it is you need it.

9          MR. GERBER:  Oh, we can jump ahead to

10   revenues, Your Honor, but there was -- the

11   communications are also missing too, but I'm happy

12   to take that in any order that you would like.

13         THE COURT:  Okay.  Sorry.  I didn't mean to

14   skip through that.

15         So which types of communications?

16         MR. GERBER:  So plaintiff, Ms. Menzel,

17   communicated with defendants over e-mail for five

18   years about infringement, over e-mails and DMs on

19   social media.  We've received none of these

20   communications on defendants' end.  These are

21   documents that we know existed because we have

22   copies of them.  We imagine that there were then

23   discussions internally once they received these

24   communications, and we would need to see those

25   internal communications as well.  We've received

 1   nothing.

 2          THE COURT:  Okay.

 3          Mr. Shaw, have you looked for these?

 4          MR. SHAW:  Yeah.  So we have reviewed --

 5   first of all, we looked -- there's multiple

 6   different -- sorry.  Let me start over.

 7          From plaintiff's production, they produced

 8   e-mail correspondence that took place between

 9   plaintiff and various accounts and individuals, also

10   some social media communications between them and my

11   client.  I have asked.  Again, some of the older

12   communications, I don't believe they exist.  For

13   some of the more recent communications, I believe

14   plaintiff has those because they produced them, but

15   I've asked my client to reproduce those as well as

16   other -- we only just recently conferred about this.

17   And, again, it's Golden Week, so I haven't heard

18   back -- but as well as internal communications

19   relating to those communications is what Mr. Gerber

20   asked me to ask my client, and I have, and I don't

21   have them yet.

22          THE COURT:  Okay.  All right.  Well, we'll

23   put that on the list of --

24          MR. SHAW:  I don't expect it will be an

25   issue.  I don't object to producing those or

1   producing a privilege log.

2           THE COURT:  Okay.  Great.  Well, we'll put

3   that on the list of things that you're going to

4   continue working on and for which we'll be setting a

5   deadline.  Okay.

6           Now, revenues, Mr. Gerber?

7           MR. GERBER:  Yes, Your Honor.  Thank you.

8   Appreciate it.

9           THE COURT:  Yeah, so just describe to me

10  which revenues you're looking for and why you need

11  it.

12          MR. GERBER:  Yes, Your Honor.

13          So the reason we need it is because this is

14  critical for the deterrence and statutory damages

15  analysis.  These are billion-dollar companies who

16  have been, you know, as alleged, stealing from an

17  artist for years and have created 138 infringing

18  products.

19          And there's significant case law in this

20  district, in this circuit, that confirms that

21  defendants' size and financial assets are relevant

22  to determining statutory damages.  It goes to

23  deterrence not just as to this entity, but as to

24  potential other future entities.  It's a critical

25  factor.  And, you know, that defendants' size,

1    financial assets are "highly relevant to statutory

2    damages calculation."

3         We had a meet-confer about this with them

4    in August, with defendants in August, and Scott's

5    colleague on that meet and confer said that they

6    would on this issue wait and see what happened in

7    the other case I mentioned before Judge Netburn.

8         Judge Netburn in that case, in fact,

9    ordered them to produce -- we agreed to produce a

10   stipulation.  She ordered it.  And they did

11   stipulate to this amount.  We asked them recently,

12   would you also stipulate to that here?  And they

13   refused.  And that's where we are.

14        THE COURT:  Okay.

15        Mr. Shaw, why can't we do a similar

16   stipulation here?

17        MR. SHAW:  Well, let me try to correct the

18   record a little bit.

19        It wasn't something that was -- we had

20   negotiated with Mr. Gerber to propose a stipulation

21   that we had agreed to.  It wasn't something that the

22   judge ordered us to do.  We didn't agree that it was

23   relevant in that case for a number of reasons.  We

24   discussed it on the record.  We discussed the case

25   law, which doesn't support Mr. Gerber.  It supports

```
 1    us not having to do what he's asking us to do.
 2            We then proposed the stipulation.  He
 3    didn't find it to be sufficient.  He didn't agree
 4    with it.  No stipulation was ever entered because we
 5    did not come to an agreement on the stipulation.
 6    The one we proposed was not acceptable to Mr. Gerber
 7    in that case.
 8            And my client has decided, and we've
 9    discussed it, that it's not relevant.  We've looked
10    at the case law in the Second Circuit.  We cited the
11    case law in our letter, and it's not relevant in the
12    analysis of statutory damages.
13            You're talking about the overall size of
14    businesses in a copyright case to determine whether
15    there's sufficient, like, deterrence.  I think
16    there's other means to accomplish the goal that
17    Mr. Gerber is looking to accomplish than trying to
18    ask my client to dig through financial records and
19    try to come up with stipulations that we tried to
20    last time and it didn't work.  It failed.
21            THE COURT:  Are your clients public?  Are
22    they publicly held?
23            MR. SHAW:  No, they are not.
24            THE COURT:  Is their revenue otherwise
25    public anywhere?
```

AMM TRANSCRIPTION SERVICE   631.334.1445

1          MR. SHAW:  I don't think -- not in a

2     verifiable format.  I believe that if you were to

3     Google -- you know, do a Google search, you could

4     find things, but I don't know if that's accurate.

5          I mean, I suppose, you know, Mr. Gerber

6     could, you know, introduce, you know, evidence from

7     Google searches and things like that into the

8     record, you know, at trial for the tryer of fact

9     and, you know, try to get them admitted under 201 or

10    some other way to try to make his arguments, but

11    having my client bear the burden of going to the

12    expense and the burden and the trouble of trying to

13    put together these revenue stipulations in this type

14    of a case is unheard of.  I don't think there's any

15    precedent for it, to be honest.  I haven't seen a

16    case that's ever been ordered.

17         THE COURT:  Okay.  I'll let you each put in

18    two-page letters on this issue.  So we'll set the

19    dates for that at the end of this call, and then

20    I'll make a ruling on it at our next conference,

21    okay?

22         MR. SHAW:  Okay.  Thank you, Your Honor.

23         THE COURT:  Okay.  Next issue is, I guess,

24    just timing, Mr. Gerber?

25         MR. GERBER:  Yes.

```
 1              THE COURT:  I'm on letter, Item 3.
 2              MR. GERBER:  Yeah, I mean, as we discussed,
 3    we're happy to give defendants additional time
 4    because of the Chinese holiday, and we have Jewish
 5    holidays over the next two weeks.  If they need more
 6    time, we're open to doing that.
 7              THE COURT:  Okay.
 8              Mr. Shaw, so on page 2 of the letter, the
 9    categories are global sales data, vendor portal
10    screenshots, corporate relationships and documents
11    that don't show the SKU number.
12              What's the status of your investigation of
13    these issues?
14              MR. SHAW:  Well, I think the first thing,
15    you know, we were on -- so we've got the different
16    points.  You were talking about timing and point
17    number 3.  I think we had proposed November 1st to
18    complete what we've agreed to produce.
19              And then turning to the issue that you just
20    raised, I don't think we are agreeable to produce
21    that type of information for the reasons that we set
22    forth, you know, partially in our letter, but that
23    we could brief further if Your Honor would like.  I
24    think it's point 4 on page 5.
25              THE COURT:  The corporate relationship or
```

AMM TRANSCRIPTION SERVICE  631.334.1445

1    something else?

2            MR. SHAW:  I mean, the corporate

3    relationships in terms of just, like, general

4    corporate documents that get filed, those are fine.

5            THE COURT:  Okay.

6            MR. SHAW:  With respect to the, you know,

7    portal databases and, you know, internal dealings

8    between the parties, I mean, that's just way beyond

9    anything that would ever be required in a copyright

10    case.  It's overly intrusive and unnecessary for any

11    purpose, for any claim, defense, damages, et cetera.

12            So, you know, we would not -- we would

13    object to producing that information.  We would be

14    happy to, you know, further detail our position in a

15    letter brief or whatever the Court would like to

16    see.

17            THE COURT:  Mr. Gerber, what do these

18    vendor portal screenshots show, the ones that you

19    have, and why do you need more?

20            MR. GERBER:  Well, I guess -- I think we're

21    jumping around a little bit here.  Just to be clear,

22    I think we're conflating some issues here.  We

23    jumped past the product reviews.  And then there's

24    also the look into the servers, and then corporate

25    documents showing the relationship between the

1  defendants and the respective roles each have and

2  any of the agreements of the defendants.

3          They have not moved to dismiss any

4  defendants.  These are all jointly and severally

5  liable.  We're entitled to see how the money flows

6  between the defendants and each defendants'

7  respective responsibility for the alleged

8  infringement here.  You know, I don't think those

9  were addressed.

10         As to the portals, again, in the Keller

11  lawsuit, Judge Netburn ordered a standalone version

12  of the portal to be produced to plaintiff in that

13  case because defendants were unable to produce

14  screenshots of these portals.  These portals are

15  essentially what vendors do when they upload files

16  and when they go to sell products on the SHEIN

17  website.

18         So it's from starting the process of

19  uploading documents, uploading information,

20  uploading photographs, and then going through the

21  process to get it to where it's listed on the SHEIN

22  website.  This is the core information and documents

23  about how that process happens and what happens in

24  that process.  It's critical to understanding, you

25  know, really what happens with SHEIN, and do they

AMM TRANSCRIPTION SERVICE  631.334.1445

1    review the products that are being put on their

2    website?

3          And without having those documents in that

4    case, Judge Netburn ordered a standalone portal

5    produced so that we could, ourselves, examine that

6    portal.  You know, our suggestion would be that the

7    same thing happen here.  And in that case, that was

8    the easiest way of accessing that information.

9          THE COURT:  What do you mean by "standalone

10   portal"?

11         MR. GERBER:  The defendants were able to

12   provide us a link.  So the portal -- there's also

13   multiple portals.  And at this point, because of the

14   lack of documents, it's unclear if they're the same

15   portals.  But in that case, defendants -- there's a

16   live portal that defendants have that actual vendors

17   can use to upload documents and put products on

18   their site.

19         Defendants in that case were able to

20   provide us with a link to a standalone -- so, sort

21   of, an offline copy of the portal -- so that we

22   could, sort of, go in and look and see how it

23   operated using that copy, standalone copy, that they

24   provided for us.  And they were able to do that in

25   that case.  I don't see why they can't do that here.

1          THE COURT:  I still don't understand why
2    that's helpful to your claim.
3          MR. GERBER:  We have no idea what SHEIN is
4    doing between discussing a vendor coming to SHEIN
5    and wanting to post the infringing products on their
6    site and the product appearing on the website.  We
7    have no idea what happens in between in this case.
8    We've had access to it in the other case, but in
9    this case it hasn't been produced.
10         We also don't know how they work with
11   suppliers, what they ask of suppliers, who provides
12   the photographs, who sets the pricing.  We have none
13   of this information.  Who designs it?  You know,
14   what aspects of the products are selected?  Who
15   selects the product information?  Is it SHEIN?  Is
16   it the vendors?
17         We have none of that information.  That all
18   goes to willfulness.  That goes to willfulness.  If
19   SHEIN is involved in this process and knows about
20   this and is not taking proper action to screen for
21   IP issues, then that's willful infringement.  This
22   is critical to the willful infringement analysis.
23   And we have numerous statutory damage claims.  That
24   determines the range of statutory damages.
25         THE COURT:  Mr. Shaw?

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              MR. SHAW:  I mean, these sound like great
 2    questions for a 30(b)(6) witness to ask rather than
 3    counsel for the client.  I don't want to be, you
 4    know, under oath testifying about my client, but I
 5    will say --
 6              THE COURT:  I'm not.  I'm just asking you
 7    to tell me about documents and information that your
 8    clients have that would answer that.
 9              MR. SHAW:  Yeah, yeah, yeah.  No, I -- yes.
10    I was just commenting that those questions seem to
11    be great questions that he could ask my client
12    directly.
13              But we have a database called, you know,
14    GMP and an STMP where there's product upload
15    screenshots.  We have produced those.  So I'm a
16    little confused them saying that they have nothing.
17    There was some quality-control issue that we had
18    identified, so we're rerunning those to produce
19    better-resolution images for those screenshots of
20    the databases.  And we've produced a number of other
21    documents that do explain the process that
22    Mr. Gerber is claiming to have no knowledge about
23    whatsoever regarding the product review and the
24    posting on the website.  So we've also produced the
25    website terms and conditions themselves, which
```

1    explain a lot of this information.  And then, you

2    know, additional information can be asked as

3    questions.

4              But, yes, there are screenshots for portals

5    that need to be reproduced in a better image

6    quality, and we will do that.

7              THE COURT:  All right.  Well, I'm not going

8    to order that the standalone portal be produced at

9    this time, pending what it is Mr. Shaw is describing

10   that would be reproduced.

11             Exactly what, in terms of the corporate

12   relationship, is it that you're saying that you will

13   produce?

14             MR. SHAW:  Just the, you know, inner

15   workings between the companies.  Any, like, you

16   know, highly proprietary, confidential information

17   between, sort of, corporate entities in the case

18   that don't have any bearing on this case.

19             I mean, we'll produce the -- the products

20   in this case are all sold on websites.  Each of the

21   websites have terms and conditions that explain the

22   relationship between the party hosting the website

23   and the corporate entities for the defendants in

24   this case.  I think what Mr. Gerber is asking for is

25   information above and beyond that, which I don't

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    think is relevant or necessary to any claim defense
 2    in this case.
 3           THE COURT:  What about any policies or
 4    procedures though?  Do any of your clients maintain
 5    something about what's done with a new product
 6    that's presented to SHEIN and how it's -- what your
 7    client does to review and decide whether to put it
 8    up on one of the websites?
 9           Is there some kind of policy and procedure
10    document there?
11           MR. SHAW:  Yes.  We've produced those.  We
12    have policies and agreements on the website.  We
13    have terms and conditions.  We have an IP notice.
14    We have different policy things we produced.
15           THE COURT:  Okay.
16           MR. SHAW:  I guess we have some archived
17    terms and conditions that we can produce in this
18    case that have not been produced.  We could get
19    those.
20           THE COURT:  Okay.
21           MR. SHAW:  I think they're accessible under
22    the archive's website too.
23           THE COURT:  Well, I think if it's
24    relevant -- if those were applicable during the time
25    period that's relevant to the plaintiff's claim --
```

1           MR. SHAW:  Yeah.  Yeah, we'll get those

2    produced then.  Yeah.

3           THE COURT:  So why don't you produce those.

4           But aside from that just, like, is there

5    any type of, like, an organizational chart that

6    exists?  Do you know, Mr. Shaw?

7           MR. SHAW:  Sort of.  And Mr. Gerber is

8    aware of it.  I mean, I'd have to check to see if we

9    produced that in this case.  I don't know if it

10   would cover every entity that he's concerned with

11   and every website, but we've produced it in the

12   past.

13          THE COURT:  Okay.  Let's produce that in

14   this case as well.  If you have it, it shouldn't be

15   any burden to produce it.

16          MR. SHAW:  Okay.  Yeah.

17          MR. GERBER:  Your Honor, if I may, just

18   to -- the fact that these documents and information

19   may be confidential, as Mr. Shaw noted, is not a

20   reason not to produce them.  Just want to note that

21   first.

22          Secondly, we had this exact same issue in

23   the *Keller* case in front of Judge Netburn, and

24   defendants were ordered to produce a range of

25   documents, not just the org chart.  But, as Mr. Shaw

AMM TRANSCRIPTION SERVICE  631.334.1445

1  noted, there are multiple websites at issue.  We
2  still don't know what entities are controlling what
3  websites.  We don't know about IP licensing between
4  the entities, who's in charge of distributing.

5          There's different infringing products being
6  sold in different websites, and it's not just all
7  from Roadget.  It's from all these different
8  entities, and we need to know which entities are
9  responsible for which components of the conduct
10 here.  We know none of that at this point in this
11 case.

12         In the other case, in *Keller* before Judge
13 Netburn, they were ordered to produce information.
14 And, you know, I'm not hearing any reason why that
15 shouldn't be produced here.  They already have that
16 information.  They could just produce it here.

17         THE COURT:  Is that the case, Mr. Shaw?

18         MR. SHAW:  Well, Mr. Gerber keeps going
19 into the *Keller* case.  And I hate to -- I never like
20 to try to litigate a case within another case
21 because it opens up more issues in more cases.

22         I will say this, that we have corporate
23 documents that we can produce.  Beyond that, what I
24 don't hear Mr. Gerber saying is why it matters,
25 other than just to harass and burden my clients.

1    Like what's the relevance to any of this, to any

2    claim or defense?  Like, it doesn't --

3              THE COURT:  Well, because it matters

4    which --

5              MR. SHAW:  When you're --

6              THE COURT:  -- which defendant was involved

7    with respect to which product, and so there may be

8    products that are more, you know, on one website run

9    by one defendant than another website.  And so, in

10   terms of allocating damages among the defendants, I

11   can see --

12             MR. SHAW:  Yeah.  I mean, we have that

13   information.  That information is available through

14   the documents that we've produced in the terms and

15   conditions.  That's all available to him.  And,

16   frankly, as a legal matter, it shouldn't matter when

17   you have multiple defendants that aren't disputing

18   that, if there's liability, it will be joint and

19   several liability.  So if there's infringement as to

20   one, they will all be joint and severally liable.

21             I don't understand what -- this would be a

22   very good issue for a letter brief, because, you

23   know, other than the exceptional case in *Keller* that

24   Mr. Gerber keeps mentioning, this is the type of

25   information that is clearly overly burdensome and

```
 1    not likely to lead to discoverability of any
 2    relevant information in this case, and I would
 3    appreciate an opportunity to brief it because it's
 4    not --
 5            THE COURT:  No.  Just because I told you
 6    you could brief one thing is not an invitation to
 7    shove a bunch of other things in there.
 8            So you're going to look for the terms and
 9    conditions that are archived and apply to the time
10    period relevant to the plaintiff's claims and
11    produce those, and you're going to produce the org
12    chart.  And that's all I'm going to order for now.
13            Mr. Gerber can review those.  And if he
14    still thinks there's something that he needs, then
15    we'll talk about it next time, but in the meantime,
16    let's focus on that, okay?
17            MR. SHAW:  Okay.  I will.
18            MR. GERBER:  Your Honor?
19            THE COURT:  Yes.
20            MR. GERBER:  Your Honor, to be clear,
21    Mr. Shaw didn't even answer your question.  To
22    answer the question, yes, they were ordered to
23    produce this in the other case, in *Keller* by Judge
24    Netburn, and they have those documents.  So he's
25    making burdensome arguments.  They already have
```

```
 1    these documents.  They've already produced them,
 2    so --
 3              THE COURT:  Neither of you are accurately
 4    representing what Judge Netburn has done, so I'm
 5    going to have to go look at that and then decide
 6    whether it applies in this case.  I'm trying to get
 7    through what we have to do today --
 8              MR. GERBER:  We would --
 9              THE COURT:  -- so let's get through what we
10    have today.  Between now and next time, I will look
11    at what Judge Netburn has done in the other case and
12    see to what extent it is relevant here.
13              MR. GERBER:  I would strongly encourage you
14    to do so, Your Honor.  Thank you.
15              THE COURT:  Well, you never mentioned it
16    before.  You wrote me a joint letter, and you didn't
17    mention any of these orders that Judge Netburn
18    entered.  It certainly would have been helpful if
19    you had done that before today.  If all these --
20              MR. GERBER:  They were entered two weeks
21    ago in the interim, Your Honor.
22              THE COURT:  No.  Your letter came in on
23    September 27th, Mr. Gerber.  You could have
24    mentioned these orders that Judge Netburn had
25    entered if you thought that they were relevant to
```

```
 1    any of the issues here.  So you're sandbagging me a
 2    little bit, and it's a little bit unfair.  And so I
 3    want to understand exactly what Judge Netburn was
 4    presented with and what she ruled.  And I'm going to
 5    do that independently because I don't trust either
 6    of you to accurately represent to me exactly what it
 7    is she did.
 8            All right.  What else, if anything, on item
 9    number 3 on the issues, Mr. Gerber?
10            MR. GERBER:  That's it for the documents.
11    The only remaining issue is the amended complaint
12    and the deposition schedule.
13            THE COURT:  Okay.  All right.  So you want
14    to amend your complaint, Mr. Gerber?
15            MR. GERBER:  Yeah.  Oh, yes, we do, Your
16    Honor.  We received a deposit copy from the
17    Copyright Office yesterday, actually, and we were
18    waiting on that so that we could amend the
19    complaint.  So now that we have it, we intend to
20    amend the complaint based on that, that we received
21    from the Copyright Office.
22            THE COURT:  Okay.
23            Mr. Shaw, do you have a position on that,
24    or do you want to see the complaint, the proposed
25    amended complaint?
```

```
 1              MR. SHAW:  I would like to see it, but the
 2    rules for amending complaints are very liberal.  We
 3    would stipulate.
 4              THE COURT:  Okay.  All right.
 5              So, Mr. Gerber, how about you -- we'll talk
 6    about a deadline for this, but how about you draft a
 7    proposed amended complaint, send it to Mr. Shaw and
 8    if you can agree, then you can just submit it on
 9    consent, okay?
10              MR. GERBER:  That sounds good to the
11    plaintiff.
12              THE COURT:  Great.  Okay.
13              Okay.  And then, I guess, the last thing
14    you said is the deposition of the plaintiff?
15              MR. GERBER:  That's correct, Your Honor.
16              As we've been discussing, we still are
17    missing a huge amount of documents in this case.  We
18    think it's premature to schedule depositions at this
19    point.  We absolutely want to schedule depositions,
20    but I think it's best to wait until we resolve some
21    of these discovery issues until we do so.
22              THE COURT:  Right.  But what's in the
23    defendants' documents is not knowledge that your
24    client has.  So I understand you want more documents
25    from the defendants, and we're going to work on
```

```
 1    that, but I don't see how it affects when the
 2    plaintiff sits for her deposition.
 3            I mean, there's no way defendants are not
 4    going to have to sit for deposition.  It's not like
 5    she's going to be left hanging there, the only
 6    person having been deposed.  But, I mean, we can
 7    certainly talk about scheduling.  Obviously, it's
 8    not going to happen tomorrow.
 9            MR. GERBER:  Right.
10            Well, the other issue is that we noticed
11    defendants' depositions months and months ago and,
12    you know, put placeholder dates and encouraged
13    defendants to discuss availability and dates with
14    us, and so that's all we're asking now.  But, you
15    know, for defendants, it's sort of a demand that we
16    proceed with our deposition of plaintiff, even
17    though we already noticed it months before.  You
18    know, I think we're just encouraging a discussion
19    and schedule that makes sense for everybody.
20            THE COURT:  Mr. Shaw?
21            MR. SHAW:  I mean, if Mr. Gerber wants to
22    wait to take my client's deposition until he has all
23    the documents, that's fine.  We don't need to wait
24    to take his client's deposition.  We'd like to
25    proceed with it at the soonest available date, but
```

1    we don't have any.  He has not provided any dates.

2          I'm happy to work with him on scheduling my

3    clients' deposition any day he would like.  He's the

4    one that wants to wait, but we don't want to, and we

5    don't have any obligation to wait.  We want to take

6    the deposition as soon as possible, so I just kindly

7    asked for alternative dates and he won't give me

8    any.

9          THE COURT:  I mean, this is ridiculous,

10    really.  Both of you, should be ashamed of

11    yourselves.

12          All right.  Plaintiff's deposition is not

13    going to happen tomorrow, even though it was noticed

14    for tomorrow, but the parties need to meet and

15    confer between now and the next time we talk.  And

16    we'll talk about exactly when that's going to be.

17    And by the next time we talk, I want you to have

18    firm dates for all the depositions, both plaintiff

19    and the defendant.  And if you can't do it, then

20    I'll set them.  And the dates that I pick are going

21    to be the dates that they happen.  I don't care what

22    people's schedules are.  So that's what you get for

23    not being able to be civil to each other.

24          All right.  Mr. Gerber, any other discovery

25    issues that from the plaintiff's perspective you

AMM TRANSCRIPTION SERVICE  631.334.1445

1    want to raise today?

2              MR. GERBER:  I guess the only other -- the

3    only issue is on product review process.  They've

4    produced policies that these reviews happen, but

5    there's no documents that show, you know, what

6    happened from these reviews and the result of them,

7    and so we are still missing some of those documents.

8    But I'm happy to put that in a basket of things that

9    defendants are still going to look for, if that's

10   amenable to defendants.

11             THE COURT:  Okay.

12             Mr. Shaw, is that something you're still

13   looking for?

14             MR. SHAW:  Yeah, that's fine.  It can ...

15             THE COURT:  All right.  Okay.

16             MR. GERBER:  The product review, the IP

17   library and then there's a U.S. audit team that's

18   all, sort of, bundled together in this, and we're

19   happy to give defendants more time to look for that.

20             THE COURT:  Okay.  All right.

21             So, Mr. Shaw, you think -- I'm going to do

22   a laundry list of things in the post-conference

23   order of all the things that we've talked about

24   today, but do you think by November 1st, reasonably,

25   we could know one way or the other whether you've

```
 1   exhausted your options for finding everything, and
 2   you'll have produced them by then?
 3            MR. SHAW:  Yeah.  That's why I selected the
 4   date -- it was a little ways off -- because we have
 5   Golden Week and all this type of thing.  But by the
 6   time we have our next call, I should have a better
 7   update on these open items.
 8            THE COURT:  Okay.  All right.
 9            So how about we plan to talk again.  How is
10   11 a.m. on November 7th?
11            MR. SHAW:  November 7th?  That's fine.
12            THE COURT:  It's a Thursday.
13            And then the only issue that I've said that
14   we need briefing on is the revenue issue.
15            So, Mr. Gerber, could you get your letter
16   to me, no longer than three pages, by October 15th?
17            And then, Mr. Shaw, could you get your
18   response to me by October 29th?
19            MR. SHAW:  Yes, Your Honor.  That works.
20            THE COURT:  Okay.  And then my hope would
21   be to make a ruling on that when we talk on November
22   7th, all right?
23            MR. SHAW:  Sounds good for defendants.
24            THE COURT:  Great.
25            And then, if you could, put in a joint
```

```
 1    letter like you did for today by November 4th, with
 2    any issues that are ripe for my consideration.
 3            MR. SHAW:  Works for defendants.
 4            THE COURT:  Aside from the revenues issue.
 5    You don't need to include that.  That's ordered
 6    separately.
 7            Okay.  I'm sorry, Mr. Shaw, I didn't give
 8    you a chance, I guess.  Are there any other
 9    discovery issues you wanted to raise?
10            MR. SHAW:  No.  I think we've covered them
11    all, Your Honor.  Thank you.
12            THE COURT:  Okay.  All right.
13            You'll see a post-conference order from us
14    that sets out the dates that I just outlined, the
15    deadline of November 1st for the defendant to
16    complete its review, collection and production of
17    the documents that we've discussed today, a joint
18    letter with ripe issues from the parties by November
19    4th, a conference November 7th at 11 a.m., and then
20    a separate letter briefing schedule on the revenue
21    issue for October 15th and October 29th.
22            Any questions about that, Mr. Gerber?
23            MR. GERBER:  No, Your Honor.
24            THE COURT:  Okay.  Very good.
25            Mr. Shaw, anything else?
```

1          MR. SHAW:  No, Your Honor.  Thank you.

2          THE COURT:  Okay.  All right.  Thank you

3  very much.  We'll be adjourned.  Have a good day.

4          MR. SHAW:  Bye.

5

6                         0o0

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5   foregoing transcript of proceedings in the case of

6   Menzel v. Roadget, et al., Docket #24CV0860 was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11   Signature  _____
                        *Adrienne M. Mignano*

12                  ADRIENNE M. MIGNANO, RPR

13

14   Date:       October 8, 2024

15

16

17

18

19

20

21

22

23

24

25

                AMM TRANSCRIPTION SERVICE  631.334.1445