```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                                 :
                                            Docket #24cv860
 MENZEL,                                :

                    Plaintiff,          :

   - against -                          :

 ROADGET BUSINESS PTE LTD., et al.,     : New York, New York
                                          November 7, 2024
                    Defendants.         :

------------------------------------ :

                    PROCEEDINGS BEFORE
                 THE HONORABLE SARAH CAVE,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          KUSHNIRSKY GERBER PLLC
                        BY:  ANDREW GERBER, ESQ.
                             VANESSA SORRENTINO, ESQ.
                        27 Union Square West, Suite 301
                        New York, New York 10003


For Defendants:         MERCHANT & GOULD, P.C.
                        BY:  SCOTT SHAW, ESQ.
                        8383 Wilshire Boulevard, Suite 935
                        Beverly Hills, California 90211
```

```
Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None    |        |       |           |          |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None           |             |    |    |           |

```
 1                      PROCEEDINGS                    3

 2            THE COURT:  Good morning, this is Magistrate

 3   Judge Cave.  We're here for a conference in Menzel v.

 4   Roadget Business, case number 24cv860.  May I have the

 5   appearances starting with plaintiff's counsel please.

 6            MR. ANDREW GERBER:  Yes, Your Honor, this is

 7   Andrew Gerber for plaintiff.  I'm on the phone with my

 8   colleague Vanessa Sorrentino.

 9            THE COURT:  All right, good morning.

10            MR. GERBER:  Good morning.

11            THE COURT:  And for defendants.

12            MR. SCOTT SHAW:  Scott Shaw on behalf of

13   defendants.

14            THE COURT:  Okay, good morning.  So we have the

15   parties joint status letter that lists a number of

16   issues that were raised or documented in the Court's

17   post-conference order from last time.  I would like to,

18   just in terms of the agenda, start today with the items,

19   the six items that were listed in the Court's post-

20   conference order from October 1, an then we'll turn to

21   the financial information that the plaintiff is seeking

22   from the defendants.  Then we'll talk about scheduling

23   including scheduling of depositions, and we'll touch on

24   the motions for leave to amend as well.

25            So, Mr. Gerber or Ms. Sorrentino, may I start
```

1                              PROCEEDINGS                    4

2    with you.  It seems like with respect to the six

3    categories in the Court's post-conference order, the

4    defendants say that they have produced something.  I

5    understand that you're not happy with it.  But what are

6    you claiming is missing from the six items that the

7    Court ordered in the post-conference order from October

8    1?

9              MR. GERBER:  Yes, thank you, Your Honor, this

10   is Andrew Gerber.  I guess the first one is transaction

11   data.  I want to flag that defendants have flagged this

12   as attorney's eyes only.  So I'll defer to defendants as

13   to whether they want to have this portion of the

14   discussion be off the record or move to seal it later

15   on, but I want to just flag that just to be fully

16   transparent and comply with the protective order.

17             THE COURT:  Okay, well, proceed, and then when

18   you get the transcript, if there's anything that needs

19   to be marked confidential, you could do so.

20             MR. GERBER:  Understood.  So the transaction

21   data that defendants produced is glaringly inconsistent.

22   So we knew on the documents defendants produced that

23   there are over 700,000 units of infringing products that

24   were ordered and stored by defendants.  However, the

25   total data they produced to date only covers 210,860

```
 1                        PROCEEDINGS                5
```

2    transactions.  So there's a little under 500,000

3    transactions that are missing.  In the other parallel

4    cases, this has not been an issue.  There's be, it's

5    been consistent.  The difference is here, there's this

6    pretty glaring anomaly between what we know the total

7    units sourced are and the total transaction at issue.

8            So we're just trying to figure out why there is

9    this 500,000 transaction discrepancy, what's missing,

10   why is it missing.  We have not gotten any information

11   about that.

12           THE COURT:  Were there some transactions that

13   involved multiple units or is it a unit transaction, is

14   it a one-for-one --

15           MR. GERBER:  It's a one-for-one, Your Honor.

16           THE COURT:  Okay.  Mr. Shaw.

17           MR. SHAW:  I'd have to ask my client to look

18   into it because I'm not, this is the first I've heard of

19   it.  But Mr. Gerber is making that representation and

20   you said that it hadn't been an issue in the other case,

21   it's probably something that I can look into and get a

22   response to him very quickly.  The one thing that my

23   client is typically able to turn around and in a

24   reasonable amount of time is information regarding to

25   transactional data.  It's not an overly burdensome item.

```
 1                      PROCEEDINGS              6
 2  So I don't expect that would be an issue.
 3            THE COURT:  Okay.
 4            MR. SHAW:  I'll have to look into that and get
 5  Mr. Gerber an answer.  I just don't have an answer for
 6  you on the call today because it's the first I heard of
 7  it.
 8            THE COURT:  Very good, thank you.  So we'll put
 9  that on the follow-up list.  What's next, Mr. Gerber?
10            MR. GERBER:  Documents regarding how the 107
11  products were created, designed, and sourced.  They've
12  produced nothing on this.  They say none exist, but they
13  have these for some products, for about 31 products we
14  have this information, but there's 107 products for
15  which they have not.  So, again, we're not sure why
16  these documents are missing.  If defendants wants to
17  take the position, I know Your Honor mentioned this
18  before, look, if defendants say, look, these documents
19  don't exist, understand, this is sort of why depositions
20  are necessary if we want, if defendants' position is we
21  just don't have these documents, fine, at a certain
22  point we can't keep pushing that.  We need to take
23  depositions and ask the deponents well, why is that the
24  case.
25            THE COURT:  Okay, last chance, Mr. Shaw.  Are
```

1

2  you going --

3          (interposing)

4          THE COURT:  -- otherwise we got to move on.

5          MR. SHAW:  I understand.  We don't have

6  documents.

7          THE COURT:  Okay, but just be warned if you sit

8  down for the deposition and this witness, your witness

9  miraculous says oh, yeah, we do have those documents,

10 here are they, and then you need to produce them, and

11 the witness needs to come back, that's going to be at

12 your client's expense.  Just consider the warning.

13         MR. SHAW:  Yes, I understand.

14         THE COURT:  Okay, thank you.  Next.

15         MR. GERBER:  Thank you, Your Honor.  And to be

16 clear, we're trying to be cooperative and resolve this

17 and appreciate that.  The next is an organizational

18 chart showing the relationship between defendants.  One

19 was produced, it's inaccurate.  We know that defendant

20 Fashion Choice ownership is not correctly shown in the

21 chart.  In addition, the chart is missing the defendant

22 Zoetop.  So, again, they were ordered to produce a

23 complete accurate chart, they have not.

24         THE COURT:  Mr. Shaw.

25         MR. SHAW:  The org chart we produced is what we

```
 1                     PROCEEDINGS                8
 2   produced.  I guess, I mean we've produced a responsive
 3   document.  If he thinks it's inaccurate, I guess that's
 4   an argument.  I don't know if it's per se a discovery
 5   dispute.  And with respect to Zoetop I have not been
 6   able to locate one.
 7           THE COURT:  Okay, why don't you ask the witness
 8   about this in the deposition, Mr. Shaw, or Mr. Gerber.
 9   Okay?
10           MR. GERBER:  Sure.  Just to be clear, this is
11   an attorney created documents, and it's just literally
12   missing information.  Missing defendant Zoetop.  So, you
13   know, I'm not sure why that's the case, but, sure, if
14   that's absolutely something that I can ask the witness,
15   and they'll confirm that, in fact, one of the parties is
16   missing.  But happy to defer to deposition.
17           THE COURT:  Okay, thank you.
18           MR. GERBER:  And then communication – sorry,
19   number two, moving on, was communications both with
20   plaintiff and concerning plaintiff's infringement
21   allegations.  There's been no privilege log produced,
22   and my understanding is that defendants are saying,
23   well, these are all privileged communications.  We
24   haven't seen any and we have no privilege log.  So if
25   defendants are going to take that deposition, we need to
```

```
 1                        PROCEEDINGS                    9
```

2  have a privilege log, and nothing's been provided.

3          THE COURT:  Okay, Mr. Shaw, are you preparing a

4  privilege log?

5          MR. SHAW:  Yes.  Can I get clarity on that?

6  Communications regarding what issue?

7          THE COURT:  Plaintiffs and her complaints of

8  infringement.

9          MR. SHAW:  Okay.  Yeah, so we produced the

10 correspondence, and then we're talking about the – yeah,

11 I can prepare a privilege log, sure.

12         THE COURT:  Okay, how long do you need to do

13 that, two weeks?

14         MR. SHAW:  That'd be great, yeah.

15         THE COURT:  Okay.  Very good.

16         MR. GERBER:  And just to clarify, to answer the

17 question, every time plaintiff reported the infringement

18 to Shein which she did repeatedly, we just want to know,

19 you know, among other things, what was Shein's response,

20 what were the communications internally about that.

21         THE COURT:  Okay, is there additional

22 correspondence, Mr. Shaw, that is not privileged that

23 you haven't produced or are you saying anything that you

24 haven't produced is privileged?

25         MR. SHAW:  What we produced is non-privileged.

```
 1                        PROCEEDINGS            10
 2   I have not seen privileged communications, but to the
 3   extent they exist, I will be logging those within two
 4   weeks.
 5            THE COURT:  All right.  Okay, so you either
 6   have what there is or you're going to get a log of it,
 7   and then you can, if there's issues with the log, Mr.
 8   Gerber, you can (indiscernible).
 9            MR. GERBER:  Understood, thank you, Your Honor.
10            THE COURT:  Great, next.
11            MR. GERBER:  Then the last two, defendants'
12   terms and conditions, and the results of the defendants'
13   review process.  We have not gotten these for the
14   former, we have not gotten them without explanation.
15   And then for the review process documents, we're missing
16   these for many products, (indiscernible) said some don't
17   exist.  Again, for these two things, if defendants'
18   position is, in fact, these don't exist, these, again,
19   are items that we can ask about in deposition without
20   having to push this further.
21            THE COURT:  Okay, I thought Mr. Shaw said in
22   his response that they did produce their internal
23   records, I'm looking at page 4 of the letter, internal
24   records regarding the results of their product review
25   process.  Is that correct, Mr. Shaw?
```

```
 1                        PROCEEDINGS              11

 2            MR. SHAW:  Yes.

 3            THE COURT:  And then a little bit earlier in

 4   that paragraph, they say they've produced the current

 5   and archived terms and conditions.  Are you just not

 6   sure where those are in the production, Mr. Gerber, or

 7   you've seen them and that's not what you're looking for?

 8            MR. GERBER:  So I'll answer the (indiscernible)

 9   first.  They produced only single version of those, and

10   we know there's multiple versions or we're missing other

11   versions if they don't have the version, they can make

12   confirm that, and we'll ask about that in depositions.

13   And then as for the product review process, we're

14   missing that for over 20 of the product at issue.  We

15   have no product review process documents.

16            THE COURT:  Mr. Shaw.

17            MR. SHAW:  Yes, I mean if they don't exist, we

18   can't produce them.  So we've produced what we have, but

19   I think Mr. Gerber's right, you can ask about those

20   issues in deposition as we discussed with I think it was

21   point number 2, we're adding 107.  And terms and

22   conditions, the thing that other versions exist, I'm not

23   aware of that, but I'll follow up and ask my clients if

24   there are any additional versions that we have.  I'm

25   just thinking aloud right now.
```

```
 1                        PROCEEDINGS              12

 2              THE COURT:  I'll include it in the post-

 3   conference order as well.

 4              MR. SHAW:  Okay.

 5              THE COURT:  I think that's everything from the

 6   October 1 order, Mr. Gerber.  Anything else?

 7              MR. GERBER:  Yes, Your Honor, so missing SKU's.

 8   So there were – defendants produced hundreds of

 9   documents about each of the products, and we discussed

10   this at the last conference.  It wasn't in order.  And

11   defendants agreed at the last conference that they would

12   provide the SKU's for each of the products because right

13   now what we have are, we have these documents, you know,

14   documents for each product but we don't know the product

15   to which they apply.  So we have information but no

16   product link, and so it's impossible for us to

17   understand the product that it applies to.  And

18   defendants at the last conference said they would

19   provide the SKU list corresponding to each of the

20   documents, and we have not gotten that yet.  I think

21   that would be a much more efficient way of dealing with

22   this than having to go through 300 documents in a

23   deposition asking which document, which product is each

24   applied to.

25              THE COURT:  Sure.  A SKU list, Mr. Shaw.
```

```
 1                        PROCEEDINGS              13

 2            MR. SHAW:  Yeah, we've done that before.  We

 3   can do that.  It takes a bit of time, but we can

 4   definitely do that.

 5            THE COURT:  Great.

 6            MR. SHAW:  It's something that we're going to

 7   have to do and create because some of the documents that

 8   we produced that relate to a particular SKU don't

 9   identify the SKU on the document.  So we can do that,

10   you know, the timing of which we can we do that, I would

11   say maybe like, you know, two to three weeks maybe.

12            THE COURT:  Why don't we say three, okay.

13            MR. SHAW:  Okay.

14            THE COURT:  Thank you.

15            MR. SHAW:  Thanks.

16            THE COURT:  All right, Mr. Gerber.

17            MR. GERBER:  Great.  And then the last issue is

18   so the server location, this one is critical.  So I'd

19   like to explain why it's so important.  We've alleged

20   that we're entitled to ex-U.S. profits from sales

21   outside the U.S., and our understanding is that these

22   are essentially well in to the seven figures.  So a very

23   huge chunk of damages are outside the U.S.  We've

24   alleged that there is a predicate act in the U.S. that

25   allows us to seek those ex-U.S. damages.  The location
```

PROCEEDINGS                    14

2  of defendants' servers, so where they're hosting these

3  websites at issue and products at issue on the websites

4  that are at issue here, we've alleged that these are in

5  the U.S.  And as a result, that is a predicate act in

6  the U.S.  Defendants have not moved to dismiss that

7  component of our complaint.

8        And the response on the discovery issues,

9  defendants have stated that this is public information

10  that we could obtain publicly and that they don't have

11  to produce it.  Unfortunately, that's just not the case.

12        So defendants' websites, like many commercial

13  large websites, use what's called proxy servers.  They

14  use Cloudflare as one of them.  Essentially, these third

15  parties that are a proxy, so that people visiting their

16  site don't actually see the location of or information

17  about your company's servers.  There's a variety of

18  reasons to do this just to conceal the location,

19  security, among other things.  So we the public have no

20  way of knowing where the actual servers are located

21  because of these proxy servers.

22        And so this is information that's obviously in

23  defendants' possession.  They know where their servers

24  are.  They can just tell us.  If they want to stipulate

25  that they're in the U.S., we're fine with that.  If they

PROCEEDINGS                    15

want to produce these documents confirming where they

are, we're fine doing that too.  But this is pretty

simple information that we think we are absolutely

entitled to receive.

THE COURT:  All right, Mr. Shaw.

MR. SHAW:  Okay, this is the first I've heard

Mr. Gerber offer some options.  I just want to make sure

I'm clear so I can go back to my client.  You said if we

could stipulate to where they're located, that would be

fine, and then there was another option that I don't

think I heard.

THE COURT:  I think he said either --

(interposing)

MR. GERBER:  We --

THE COURT:  -- stipulate to the location or if

you had documents showing where they were.

MR. SHAW:  Okay.

MR. GERBER:  Stipulate that they're in the

U.S., to be clear.  If you're willing to stipulate

they're in the U.S., we're fine with that.  And we have

raised this multiple times.  If you want to stipulate

that the servers are in the U.S., that's fine.  That

resolves the issue.  If not, then we would need to see

the documents showing where the servers are actually

PROCEEDINGS                    16

1

2   located.

3        THE COURT:  You want to discuss it with your

4   client and get back to Mr. Gerber in two weeks?

5        MR. SHAW:  That's fine.  I'm writing notes

6   right now.  It wouldn't be sufficient to a stip or a

7   declaration just attesting to where they are if they're

8   not in the U.S.?

9        MR. GERBER:  No, we would want to see

10  documentation of that.  But because our position is

11  they're in the U.S.  So if you want to stipulate to the

12  fact that the servers are in the U.S., that cuts the

13  corner and resolves this.  That's fine.  But if not, if

14  you won't stipulate that they're in the U.S., we're

15  going to need to see discovery on this and examine where

16  you're claiming they're located.

17       THE COURT:  Why is it that you believe – what's

18  the basis, Mr. Gerber, for believing that they're in the

19  U.S.?

20       MR. GERBER:  We've seen allegations, we've seen

21  statements elsewhere that Shein has moved operations to

22  the U.S.  We know they're moving operations to the U.S.

23  We believe that they are conducting business in the

24  U.S., and they have, some of the defendant entities do

25  have locations in the U.S.  Shein Technology, for

PROCEEDINGS                    17

example, is a U.S.-based defendant, and so we believe

that they are, at least with Shein Technology defendant,

server locations, documents, and conduct in the U.S.

that would constitute predicate acts here.

THE COURT:  Okay.  All right, so, Mr. Shaw,

you'll discuss it with your client and you can --

MR. SHAW:  Yeah.

THE COURT:  -- inform Mr. --

MR. SHAW:  I'll either - yes, I'll propose the

two options, either stipulation if servers are in the

U.S. or documents to show that they are outside the

United States.

THE COURT:  Great.  Okay, thank you.  Mr.

Gerber, are we up to global --

MR. GERBER:  That --

(interposing)

MR. GERBER:  That's it I think at this point as

far as the open written discovery issues.

THE COURT:  So elaborate for me more.  I have

obviously your letters on the global revenue, and in

your letter you're seeking this discovery has narrowed

it to a stipulation.  Can you describe exactly what

you're proposing the stipulation would say?

MR. GERBER:  You're asking me, Your Honor?

<pre>
 1                    PROCEEDINGS            18

 2          THE COURT:  Yes.

 3          MR. GERBER:  Andrew Gerber?

 4          THE COURT:  Yes.

 5          MR. GERBER:  Yeah, global revenues are

 6   concerned, we would be fine having defendants provide

 7   the exact same stipulation they provided in the other,

 8   the parallel case, in Keller, which is essentially they

 9   stipulated to a floor, and, you know, we mentioned

10   confidentiality (indiscernible) discussed here, and they

11   stipulated to a floor, (indiscernible), Scott, of global

12   revenues of $6 billion.  And our understanding was in

13   excess of $6 billion was the language.

14          We responded, well, in excess is, as a

15   qualifier, it's, we believe it's actually, you know,

16   five to six times that, but eventual resolution in

17   Keller through Judge Netburn was, look, 6 billion is

18   high enough such that it's not going to move the needle

19   much if it's 6 billion or 30 billion, and we agreed with

20   that, and we agreed to accept the stipulation as to $6

21   million.  And we're just doing that here too.

22          THE COURT:  Okay.  Mr. Shaw, can we --

23          MR. SHAW:  I can't get into the issues in the

24   Keller case because there were things on the record or

25   off the record that are unique to that particular case.
</pre>

```
 1                        PROCEEDINGS              19
 2   I can say the only time it's actually been briefed and
 3   decided was the Fitzpatrick case, and the judge denied
 4   Mr. Gerber's request.  My client's not willing to
 5   provide that stipulation for a number of reasons, and
 6   those reasons primarily are set forth in our position,
 7   in our letter.  It's not proportional, it's not
 8   relevant, it has, it's going to have no bearing on the
 9   issues that are going to be litigated in the case if the
10   case is ever litigated.
11              (interposing)
12              THE COURT:  Hold on.  Mr. Shaw, is the floor in
13   this case the same as it is in Keller or is it a
14   different number?
15              MR. SHAW:  To be honest, Your Honor, I don't
16   have the Keller file up in front of me.  I don't even
17   know what the number is and what would be the same.
18              (interposing)
19              THE COURT:  -- you said it was 6 billion.
20              MR. SHAW:  Mr. Gerber said that.  I don't
21   recall.  I don't have it in front of me.  I don't know
22   what the answer is.
23              THE COURT:  Is it the same websites in Keller
24   as in this case?
25              MR. SHAW:  The Shein would be the same.
```

PROCEEDINGS                 20

1

2          THE COURT:  Okay.  And you did enter into a

3   stipulation in Keller and --

4          MR. SHAW:  No, we had proposed a stipulation

5   that wasn't sufficient according to Mr. Gerber, and it

6   was not sufficient for the court.  So no stipulation was

7   entered.  We had simply proposed, we had simply provided

8   a proposal to Mr. Gerber which he rejected.

9          THE COURT:  Right, but he's saying now he's

10  willing to accept what you proposed in Keller which is a

11  floor of 6 billion.  Are you paying attention, Mr. Shaw?

12  Are you listening or are you doing something else while

13  we're talking?  You said --

14          MR. SHAW:  I'm not --

15          THE COURT:  -- he's willing to accept what you

16  proposed in Keller, which is a stipulation that your

17  global revenue was in excess of 6 billion.  My question

18  is are you - whether it was finalized in Keller or not,

19  are you and your client willing to enter into a

20  stipulation with a floor of global revenue of 6 billion?

21          MR. SHAW:  No.

22          THE COURT:  All right.  Well, I'm going to

23  order that you do because I find, first of all, the

24  cases that you cite in your letter are inapposite.  You

25  cite cases that are wage and hour cases, not cases like

PROCEEDINGS                    21

this one, not copyright cases.  Second of all, I've

reviewed the plaintiff's cases, and the plaintiff's

cases support courts requiring disclosure.  It's another

issue what the jury sees, but we're just talking about

discovery here, of the size of the global revenue of the

defendant.  And I think so it is relevant and it has

been ordered by other courts including in, I'm not sure

how you pronounce it, the Psihoyos, P-S-I-H-O-Y-O-S,

where the court acknowledged that larger defendants and

the amount of their financial resources are relevant to

the quantification of statutory damages that may be

awarded.  In particular, the district court decision in

that Psihoyos case noted that statutory damages have to,

quote, "hurt the offender's pocketbook enough for him or

her to take notice."  And so for that reason the global

revenues are relevant.  I'm not predetermining whether

it's admitted to the jury, it's another question, but

just in terms of whether it is disclosed.

        It also goes, as the plaintiffs point out in

their letter, to the sophistication of the defendants

and the jury determination of the state of mind of the

defendants when they allegedly engaged in the infringing

behavior.

        So, Mr. Gerber, you can propose or provide to

1                          PROCEEDINGS                 22

2  Mr. Shaw a stipulation that, and I don't know if it's 6

3  billion but whatever the number is that the defendants'

4  global revenue for the websites that are at issue in

5  this case is in excess of X dollars.  And so you can

6  provide that to Mr. Shaw, and my hope is that,

7  consistent within the Court's ruling here on the record

8  today, that the parties can finalize that language.  And

9  if a stipulation works or a declaration, whatever is

10 preferrable, but some piece of evidence that provides

11 the defendants, the floor of the defendants' global

12 revenues for the websites at issue in this case.  And so

13 that's the Court's ruling on ECF number 79.

14         Next, are there disputes still about scheduling

15 depositions?

16         MR. GERBER:  This is Andrew Gerber, Your Honor.

17 I think it makes to sort of talk that through.  There

18 have been some rulings in the other parallel cases

19 within the last 18 hours.  So I think it's helpful to

20 talk about that.

21         So in the Fitzpatrick case Judge Furman ordered

22 depositions to proceed before settlement conference and

23 to happen before January 31.  We have three depositions

24 that are going to be happening, and we're working with

25 Mr. Shaw to schedule those likely in early December.  In

PROCEEDINGS                23

2  the Amore case Judge Caproni last night issued an order

3  granting our request similar.  Depositions are to

4  proceed there by the end of December and also to do so

5  before settlement conference there, and, again, that was

6  last night.  We've emailed Mr. Shaw, and we're going to

7  be working with him over the next couple of days to try

8  to get all those scheduled.

9       All that to say, the parties November and

10  December went from open to quite booked.  And so I think

11  at this point, also given the fact that we have the

12  pending motion to amend that we thought was going  to be

13  stipulated to but it was not, at this point it probably

14  makes sense to, you know, I know that Your Honor gave

15  defendants some weeks to comply with some discovery

16  issues here.  If we aim to schedule depositions here,

17  I'd say late January into February, that's fine with

18  plaintiff.

19       THE COURT:  Mr. Shaw.

20       MR. SHAW:  Yeah, I mean I agree with part of

21  what Mr. Gerber said with respect to Fitzpatrick and the

22  Amore cases and the depositions that were ordered.

23  We've had three defense depositions in Fitzpatrick.  We

24  also have a plaintiff's deposition.  In Amore there'll

25  possibly be more than three, and we'll have a

```
 1                        PROCEEDINGS                   24
 2   plaintiff's deposition.  The judge, Judge Furman in
 3   Fitzpatrick also had told Mr. Gerber to coordinate
 4   regarding all cases to make sure the schedule's
 5   sufficiently done, and he had at least expressed some
 6   interest in my proposal regarding certain phases and
 7   making things sufficient.
 8            Mr. Gerger and I really haven't had a chance to
 9   talk about stuff.  We have a call scheduled tomorrow to
10   do that.  But I do agree that November and December are
11   booked.  What I can't agree with is late January and
12   early February, and Mr. Gerber knows this.  That's
13   Chinese New Year.  So we could do early January, for
14   example, like the week of the January 6 and January 13,
15   to carve out for depositions for the defendants.  We
16   could probably also do late February.  Because Chinese
17   New Year is towards the end of January.  That runs into
18   early February, and from what I understand, some of the
19   people start taking that holiday sooner than it's
20   actually says on the calendar and then extend it a bit.
21   So we wouldn't be able to get prepped up and do
22   depositions until later February, but we also have
23   earlier in January available as I've told Mr. Gerber.
24            THE COURT:  Okay.  Let me just also check in
25   with you about the motion to amend.  I'm jumping a
```

```
1                        PROCEEDINGS              25
2    little bit.  But I went back and looked at the
3    transcript of the last conference, Mr. Shaw, and you
4    said that you would stipulate.  What's changed?
5              MR. SHAW:  When I saw the – yes, I recall that
6    as well, Your Honor.  I had to look at that.  What I
7    received is not what I was expecting to receive when I
8    saw the proposed amended complaint.  So I couldn't
9    stipulate.
10             THE COURT:  All right --
11             (interposing)
12             MR. SHAW:  In part because --
13             THE COURT:  -- are you proposing --
14             (interposing)
15             MR. SHAW:  Because the defendants --
16             THE COURT:  Are you filing an opposition to the
17   motion for leave to amend?
18             MR. SHAW:  No, I don't represent – there's a
19   new party added, there's different allegations that were
20   made that were stricken and taken out were in the notice
21   and the time they learned of the infringement or the
22   alleged infringement.  So I can't stipulate, but I don't
23   imagine filing an opposition to it either.
24             THE COURT:  Okay.
25             MR. SHAW:  Oh, one other thing, Your Honor, in
```

```
 1                        PROCEEDINGS              26
 2   terms of you're asking about depositions and if we're
 3   going to be pushing them out till, you know, January or
 4   February, we would have availability and per the letter
 5   that I had submitted, you know, ask the Court to set a
 6   scheduling or, sorry, a settlement conference to have
 7   Christina Menzel have an opportunity to, you know, hear
 8   what we have to offer in terms of a settlement to see if
 9   she has interest.
10            THE COURT:  Well, you can do that at any time.
11   You don't need a settlement conference with me.  And at
12   this point I don't really have any dates in December
13   that I can offer you in any event.  The rest of my year
14   is pretty much booked.  So if you want a settlement
15   conference with me, we'd be looking at January at this
16   point.  January 14 or 15 I have availability in the
17   afternoon those days.
18            MR. SHAW:  I mean --
19            THE COURT:  I'm not going to be put a stay of
20   depositions in place in the meantime.  I mean it sounds
21   like you have a little bit of (indiscernible) anyway,
22   and I would also encourage you to consider, to the
23   extent we're dealing with 30(b)(6) topics that are the
24   same across all of the cases, I can't require you to do
25   this, but, Mr. Gerber, you might consider whether, is it
```

1                 PROCEEDINGS                    27

2 Mr. Wade, for example, if he's going to be a 30(b)(6)

3 witness in one case, maybe you can do all the 30(b)(6)

4 topics that are the same across the cases just with him

5 in one day or one morning or one part of a day.  And

6 then have different times for him to do either his

7 individual knowledge or topics that are unique to

8 different cases.

9        I'm just saying that if it's the same witness,

10 the same Rule 30(b)(6) witnesses for multiple cases,

11 there may be a way for the parties to do this, and I'd

12 encourage on the call tomorrow to talk about whether

13 that's possible so that you're not asking the same

14 questions over and over again and that you can kind of

15 cross-designate a transcript in multiple cases.  You

16 understand what I'm saying?

17        MR. GERBER:  I do.  We're happy to talk to Mr.

18 Shaw about that tomorrow.

19        THE COURT:  Okay.  All right --

20        MR. GERBER:  If I could respond to settlement

21 conference - sorry, Your Honor.

22        THE COURT:  No, go ahead.  Go ahead.

23        MR. GERBER:  Plaintiff is, of course, open to a

24 settlement conference, but as Your Honor is aware, as

25 seen today, there's still a huge amount of critical

PROCEEDINGS                28

discovery open, and it's not just for the sake of

getting discovery, these are sales numbers, this goes to

willfulness, this is critical to understanding the full

value of the case, and plaintiff just doesn't want to go

into a settlement conference without having that full

information understanding the full scope and the full

damages of the case.  So, yes, while we are certainly

amenable to discussing scheduling a settlement

conference, we need to have depositions first and

address some of these outstanding discovery issues

first.  And, in fact, defendants have raised the same

issue in Fitzpatrick and they've raised it in Amore, and

the judges have last week ordered depositions to happen

before settlement conference is scheduled.

          THE COURT:  Yeah, I think --

          MR. SHAW:  Your Honor --

          THE COURT:  Go ahead.  Go ahead, Mr. Shaw.

          MR. SHAW:  Yeah, Your Honor, Mr. Gerber has

made the exact same representation.  He always says in

every case that he filed against my clients that there's

critical documents missing and there's massive amounts

of information he needs to engage in settlement

discussions.  But miraculously, when the judges order

his clients, his individual clients to appear, what

```
 1                         PROCEEDINGS                29
 2   happens in the two cases?  In Keller and Wildfire, the
 3   cases settled, and he didn't have depositions in those
 4   cases.  So while he, as the attorneys for his clients,
 5   makes these statements about needing the information, it
 6   doesn't appear, at least from the cases that have
 7   settled, that his clients actually do because those
 8   cases settled when he made the same representations but
 9   only when ordered that his clients actually then come to
10   the table and settle.
11             And while you're right, Your Honor, that I can
12   propose numbers and propose to discuss settlement, I've
13   done that in every case time and time again.  And Mr.
14   Gerber won't engage with me until he's ordered by the
15   court to do so.
16             THE COURT:  Well, the bottom line is the
17   earlier dates I can offer you are the afternoons of
18   January 14 or 15, so --
19             (interposing)
20             MR. SHAW:  We'll take them, Your Honor.
21             THE COURT:  -- do you want to pick one of
22   those, but all the documents should get done in the
23   meantime.  There's no reason that we shouldn't, that we
24   can't, that you two can't discuss at a minimum cross-
25   designating or cross-coordinating the witnesses that are
```

PROCEEDINGS                30

1

2  taking place, whether that information can be used in

3  multiple cases including this one.  And to the extent

4  that your clients have availability in early January and

5  the two weeks before the settlement conference, we

6  should go ahead and get depositions done.  There's no

7  reason that they can't.  I know that Judge Furman

8  ordered I think that there are at least three or four

9  depositions take place before the settlement conference

10  in that case.  I don't know that the plaintiff needs all

11  five of the witnesses who are listed, I think it was

12  five.  Ms. Perez, Ms. Wong, Mr. Cantrell, Ms. Lu, and

13  Ms. Lee.  I don't know that, Mr. Gerber, you need all

14  five of those before the depositions, but if you want to

15  at least do the 30(b)(6) and two others before the

16  settlement conference, I think that's reasonable.

17          MR. GERBER:  We're fine with that, Your Honor,

18  yes.

19          THE COURT:  Okay.  So we will direct that the

20  30(b)(6) and two fact witness depositions take place

21  before the settlement conference.  As between the 14th

22  and the 15th of January, Mr. Gerber, do you have a

23  preference?

24          MR. GERBER:  So I mean I know that we and my

25  clients are not available the first two weeks of January

```
 1                      PROCEEDINGS              31
 2   due to holidays and existing commitments, so that's just
 3   not going to be possible for us.
 4           MR. SHAW:  If those aren't possible, Your
 5   Honor, we have to push into like late February to do
 6   depositions.  Just because of the Chinese New Year, it's
 7   not possible to get my witnesses in late January or
 8   through mid-February.  And I need time to get out there
 9   to prep them and then to have the depositions and then
10   we'll have to do a settlement conference.  Which is why
11   I thought it would make sense to do a settlement
12   conference early, it doesn't hurt to take a shot, see if
13   it settles.  If it doesn't, we can move forward to
14   depositions.  It's certainly more efficient.
15           THE COURT:  Well, so, Mr. Gerber, you're saying
16   you can't do January 14 or 15 for a settlement
17   conference?
18           MR. GERBER:  That's correct.  There's schools I
19   think don't come back until the second, the early second
20   week of January, and then we have existing, there's
21   other existing settlement conferences and other
22   commitments that second week.
23           MR. SHAW:  The 14th and 15th is the third week
24   of January, just to be clear.
25           THE COURT:  Third week in January, yeah.
```

```
 1                        PROCEEDINGS                    32

 2              MR. SHAW:  I'm looking at my calendar, it looks

 3   like the third week.

 4              THE COURT:  What about, well, would your

 5   clients be able to participate – the week of January 27

 6   is that in the Chinese holidays?

 7              MR. GERBER:  I'm sorry, to be clear, yeah, it's

 8   that, I'm sorry, I meant to say the first full week of

 9   January is when, you know, school resumes, and then

10   there's commitments that second full week of January.

11              THE COURT:  So what about the week of the 27th?

12              MR. GERBER:  Of January?  That works for us.  I

13   can check with my client, but I believe that does work

14   for us.

15              THE COURT:  Okay.

16              MR. SHAW:  For purposes of the settlement

17   conference, yes, my client who is located in the United

18   States can participate in a settlement conference on the

19   27th of January.  I'm assuming that week, I would have to

20   check the dates.

21              THE COURT:  I can't do the 27th, but I could do

22   the afternoon, I'll give you the afternoon on Tuesday,

23   Wednesday, or Thursday, 28th, 29th, or 30th.

24              (interposing)

25              MR. SHAW:  I'll check with my clients --
```

```
 1                      PROCEEDINGS                    33

 2              MR. GERBER:  To be clear, this is going to have

 3    to happen after the 30(b)(6) and two fact witness

 4    depositions, so as long as --

 5              THE COURT:  The three depositions are going to

 6    take place before that.  So you're going to have to

 7    figure out your schedule and make it happen, Mr. Gerber.

 8    You're the one who wants the depositions, and I'm giving

 9    you more, I'm pushing the settlement conference off.  So

10    you need to find a way to make this work.

11              MR. GERBER:  That's fine.  We have the second

12    half of January free and can try to schedule depositions

13    within that period.

14              THE COURT:  Great.

15              MR. GERBER:  Before the settlement conference.

16              MR. SHAW:  We only have the January 6 through

17    January 17, we have that two-week window is open for us.

18              THE COURT:  Okay, well, that's a lot of time.

19    It's only three depositions.  All right, so it's hard

20    for me to hold a lot of dates open because I have other

21    things going on, but I can hold open the afternoon of

22    January 28 and the afternoon of January 29.  Can you

23    confer with your clients and get back to me by tomorrow?

24              MR. SHAW:  Yes, Your Honor.  I have a call with

25    my clients today, so I'll ask.  28th and 29th afternoons?
```

```
 1                          PROCEEDINGS              34
```

```
 2              THE COURT:  28th and 29th starting at 2.

 3              MR. SHAW:  Okay, 2 p.m. eastern, okay.

 4              THE COURT:  And would --

 5              (interposing)

 6              MR. SHAW:  And I assume that would be remote?

 7              THE COURT:  Well, where is everybody?  Where is

 8  Ms. Menzel, Mr. Gerber?

 9              MR. GERBER:  She's in Germany.

10              THE COURT:  Okay.  So we could, well, would she

11  want the morning then because there's a time - we could

12  do the morning on the 29th?

13              MR. GERBER:  Yes.

14              THE COURT:  Okay.  All right, so can you -

15  backtracking a little bit, check on the morning of the

16  29th or the morning, I could do the morning of the 30th.

17  So change course a little bit for you.  So morning

18  starting at 10 a.m. on either January 29 or January 30

19  for a settlement conference.

20              MR. SHAW:  Okay, should we email chambers if we

21  --

22              (interposing)

23              THE COURT:  Yeah, email chambers and copy your

24  counterpart there.  So then obviously we'll wait for the

25  time to expire on motion for leave to amend, but if it's
```

PROCEEDINGS                    35

not opposed, it's going to happen.  And what we'll do

since the settlement conference is not going to be till

the end of January, we'll extend fact discovery to the

14th of February so that if the case doesn't settle,

you'll have two weeks after that to try to get the

depositions in or we'll reassess where we are and what

needs to get done at that point in time.  Okay?

          MR. SHAW:  Okay.

          MR. GERBER:  Thank you, Your Honor.

          THE COURT:  Mr. Gerber, anything else on your

list that we haven't covered?

          MR. GERBER:  Nothing for plaintiff, Your Honor.

          THE COURT:  Okay, Mr. Shaw.

          MR. SHAW:  Nothing for defendants, Your Honor,

thank you.

          THE COURT:  Thank you, you'll see a post-

conference order from us with instructions.  What I

would say is, you know, you're going to have the call

between you to tomorrow about scheduling depositions, if

there's – I wasn't – since you do have a bust November

and December, I wasn't going to put another status call

on, but if things go off the rails, ask for that sooner

rather than later so that we can get on the phone before

the end of the year.  Okay?

```
 1                     PROCEEDINGS              36
 2          MR. SHAW:  Okay, thank you, Your Honor.
 3          MR. GERBER:  Understood.
 4          THE COURT:  Okay, thank you very everyone.
 5   We'll be adjourned for today.  Have a good afternoon.
 6          MR. SHAW:  Thanks.
 7          MR. GERBER:  Thanks.  Bye.
 8          (Whereupon, the matter is adjourned.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

37

## C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of MENZEL v. ROADGET, et al., Docket #24cv860, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____
                              Carole Ludwig

Date:    November 8, 2024