UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA MENZEL,

                Plaintiff,

-v-

                CIVIL ACTION NO. 24 Civ. 860 (JGK) (SLC)

ROADGET BUSINESS PTE. LTD. et al.,

                **OPINION & ORDER**

                Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

Plaintiff Christina Menzel moves to compel production of a document that Defendants[1] have withheld under the attorney-client privilege and attorney work product doctrine (the "Document"). (ECF Nos. 143 at 2 (the "Request"); 149). After in camera inspection of the Document, and for the following reasons, the Request is GRANTED and Defendants must produce the Document to Ms. Menzel by April 14, 2025.

**BACKGROUND**

Ms. Menzel is an artist based in Germany who sells original designs in the form of prints, stickers, keychains, t-shirts, and other products. (ECF No. 98 ¶ 34). She is known for her "unique designs featuring anthropomorphic skeletons, often alongside cats and flowers[.]" (Id.) She sells products containing her original designs directly to consumers through her e-commerce website and through third-party websites and retailers. (Id.) Ms. Menzel holds copyrights on seventeen

---

[1] Defendants are Roadget Business Pte. Ltd., Zoetop Business Co., Ltd., Shein US Services, LLC, Fashion Choice Pte. Ltd., Shein Technology LLC, Shein Distribution Corporation, a Delaware Corporation, Guangzhou Shein International Import & Export Co. Ltd., and Shenhe International Holding Group Co., Ltd. (ECF Nos. 98 ¶¶ 22-29; 125-130; 132; 145).

original designs that were first published in Germany (the "Original Designs"), twelve of which she has registered with the United States Copyright Office. (Id. ¶¶ 21, 35-52).

Ms. Menzel alleges that, since February 2021, Defendants have created, manufactured, and sold "at least 164 distinct products that feature designs identical or substantially similar to" her Original Designs (the "Infringing Products"). (ECF No. 98 ¶¶ 3, 21, 35-52). Despite her repeated complaints to Defendants, Ms. Menzel alleges that they "have continued to steal [her] artwork in increasingly more covert ways, using artificial intelligence tools and other software to copy elements of [her] artwork and fuse them with other likely-stolen design elements." (Id. ¶ 4). Ms. Menzel asserts three claims for copyright infringement against Defendants under the Copyright Act, 17 U.S.C. § 101 et seq. (Id. ¶¶ 375-406).

In discovery, Ms. Menzel sought from Defendants guidelines and standards their in-house design team used to design the Infringing Products. (ECF No. 143 at 2 ("Category 5")). During a discovery conference on March 12, 2025, Defendants asserted that the Document—most of which is in Chinese and bears the title (as translated) of "SOP-SPZX-AJ-015 Design Department Anti-Infringement System"—was the only document responsive to Category 5 but contended that it was privileged and therefore shielded from production. (See ECF No. 149 at 1). The Court ordered Defendants to submit the Document for in camera review and file a letter setting forth the grounds for withholding it. (Id.)

Defendants complied, asserting that the Document is protected by the attorney-client privilege because it "was drafted based on legal advice and guidance from Defendants' in-house counsel, including Tim Wei and Lancy Zhao" and "was circulated internally within Defendants' design team." (ECF No. 150 at 1). The Document, Defendants argue, contains "(1) legal advice

2

regarding recommended methods for designing products and evaluating product designs to minimize infringement risk; (2) legal advice regarding infringement risk mitigation; and (3) legal advice based on legal analysis of previous infringement allegations." (Id. at 2). Defendants also reference the attorney work product doctrine and assert that "the Document contains a compilation of factual materials from previous infringement allegations and attorney mental impressions regarding those infringement allegations, some of which were anticipated to be litigated." (Id.)

Ms. Menzel submitted a response, arguing that Defendants have not established that the Document is a communication between a client and counsel nor that the Document was created for the purpose of obtaining or providing legal advice. (ECF No. 152 at 1-2). She adds that Defendants have not shown that the Document was prepared in anticipation of litigation, and, in any event, that she has substantial need for the Document, which is the only piece of evidence Defendants have identified as responsive to Category 5. (Id. at 2).

The Court conducted an in camera inspection of the Document, which appears to be dated September 28, 2022 or December 1, 2022. It contains four pages of text and charts, one of which appears to contain the initials and dates on which someone reviewed various products, followed by eight pages of labeled images of Defendants' products. Defendants have neither provided a complete translation of the Document nor any affidavits or declarations from Tim Wei, Lancy Zhao, or any other employees discussing the provenance of or other information about the Document.

3

**DISCUSSION**

**A. Attorney-Client Privilege**

Under federal law,[2] the party invoking the attorney-client privilege must show that the communications were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012). "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999)

To start, Defendants have not shown that the Document is a communication between an attorney and a client. They carefully state that the Document "was drafted based on legal advice and guidance from [their] in-house counsel," (ECF No. 150 at 1 (emphasis added)), but as Ms. Menzel correctly points out, "do not identify the actual individuals who drafted the Document, their titles, and whether they are non-legal personnel." (ECF No. 152 at 1). Defendants offer no attestations from any of their in-house lawyers about the provenance of the Document, or from any employee discussing any request for legal advice that gave rise to the Document's creation. See A.I.A. Holdings, S.A. v. Lehman Bros., inc., No. 97 Civ. 4978 (LMM) (HBP), 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002), supplemented by, 2002 WL 31556382 (S.D.N.Y. Nov. 15, 2002) (explaining that party asserting privilege must "submit evidence, by way of affidavit, deposition testimony, or otherwise" establishing privilege).

---

[2] Where, as here, subject matter jurisdiction is based on a federal question, privilege issues are governed by federal common law. See In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 217 (S.D.N.Y. 2001).

While it is essentially undisputed that Defendants kept the Document confidential, Defendants have failed to establish the third prong of the privilege, that the Document's purpose was to obtain or provide legal advice. See Brennan Ctr. for Just., 697 F.3d at 207. The Document is described as an "Anti-Infringement System" and on its face appears to convey business advice and information about Defendants' products rather than any legal advice. Even taking as true Defendants' representation that the Document "was drafted based on legal advice and guidance," (ECF No. 150 at 1), it still appears to be "predominantly a business communication" and "is not protected merely because it involved legal considerations[.]" Tower 570 Co. LP v. Affiliated FM Ins. Co., No. 20 Civ. 799 (JMF), 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021). Again, we have no proof of attorney involvement in creating or distributing the Document, nor do we have any proof that Defendants' employees obtained legal advice from it.

Even taking as true Defendants' unsupported representation that the Document was "based on" legal advice from in-house attorneys, such attorneys "often perform both legal and business functions," requiring that we scrutinize even more carefully claims of privilege over their communications and do not protect from production documents whose "prominent purpose . . . was to convey business advice and information[.]" Monterey Bay Mil. Housing, LLC v. Ambac Assur. Corp., No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 315072, at *7 (S.D.N.Y. Jan. 19, 2023). The primary purpose of the Document—which contains images of Defendants' products and internal reviews and descriptions of those products—is to convey business advice or information and not legal advice, so the attorney-client privilege does not apply. See In re Cnty. of Erie, 473 F.3d 413, 420 (2d Cir. 2007) ("We consider whether the predominant purpose of the communication is to render or solicit legal advice."); Valassis Commc'ns, Inc. v. News Corp., No. 17 Civ. 7378, 2018 WL

5

4489285, at *2-4 (S.D.N.Y. Sept. 19, 2018) (applying same and concluding some business documents must be produced in full while parts of others may be redacted, and still others were properly withheld).

Accordingly, Defendants have not met their burden to show the attorney-client privilege shields the Document from production.

B. **Work Product Doctrine**

The work product doctrine is broader than the attorney-client privilege, In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000), and exists to protect attorneys' mental impressions, opinions, or legal theories concerning litigation. Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989). The party asserting the work product doctrine must show that the documents "were prepared (1) 'in anticipation of litigation' (2) by a party or its representative and (3) not in the ordinary course of business." Richo Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 68 (S.D.N.Y. 2003). Even if materials are protected by the work product doctrine, they may not be shielded from production if "(i) they are otherwise discoverable under Rule 26(b)(1), and (ii) the party seeking them shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rackwise, Inc. v. Foley Shechter Ablovatskiy, LLP, No. 19 Civ. 11094 (AT) (SLC), 2020 WL 7342743, at *8 (S.D.N.Y. Dec. 14, 2020) (citing Fed. R. Civ. P. 26(b)(3)(A)).

Again, in the absence of evidentiary proof in the form of affidavits or testimony, we need not tarry long on Defendants' cursory and contorted invocation of the work product doctrine here. Defendants offer only their ipse dixit assertions that the work product doctrine shields from production what they describe as a historical "compilation of factual materials from

previous infringement allegations[.]" (ECF No. 150 at 2). But the Document is dated in September or October 2022, 18 months before this action commenced, and Defendants point to no other actual or threatened litigation for which the Document was prepared—nor do they establish that an attorney or someone acting on their behalf prepared it. Even if Defendants had a "generalized desire to avoid litigation" about their products, that desire does not demonstrate that the Document was created "in anticipation of litigation" within the meaning of Rule 26(b)(3)(A). Brook v. Simon & Ptrs., LLP, No. 17 Civ. 6435 (GBD) (SLC), 2021 WL 5919207, at *5 (S.D.N.Y. Dec. 15, 2021). At most, when the Document was created, any litigation about Defendants' products was a mere "possibility," which is "insufficient to give rise to work-product protection." Kingsway Fin'l Servs. Inc. v. PricewaterhouseCoopers LLP, No. 03 Civ. 5560 (RMB) (HBP), 2007 WL 473726, at *5 (S.D.N.Y. Feb. 14, 2007) (collecting cases); see Gould Inc. v. Mitsui Mining & Smelting Co., 825 F.2d 676, 680 (2d Cir. 1987) (explaining that work product protection "depends upon the existence of a real, rather than speculative, concern that the thought processes of [] counsel in relation to pending or anticipated litigation would be exposed").

Furthermore, nothing about the Document "reflects litigation defense strategy, or an evaluation of litigation exposure" that the work product doctrine was designed to protect. Bovis Lend Lease, LMB, Inc. v. Seasons Contr. Corp., No. 00 Civ. 9212 (DF), 2002 WL 31729693, at *10 (S.D.N.Y. Dec. 5, 2002) (holding that document was not subject to work product protection); accord Brook, 2021 WL 5919207, at *5. Simply put, the Document appears to have been "prepared in the ordinary course of business" and "would have been created whether or not litigation was anticipated," so it is "not protected by work-product immunity[.]" In re Copper Mkt. Antitrust Litig., 200 F.R.D. at 221.

7

In any event, even if the Document was entitled to work product protection, Ms. Menzel has shown a substantial need for and inability to obtain the information from another source without undue hardship. See Fed. R. Civ. P. 26(b)(3)(A). A key issue in this case is how Defendants designed the Infringing Products and what mechanisms they may have used to copy elements of Ms. Menzel's Original Designs. (See, e.g., ECF No. 98 ¶¶ 4, 59, 65-66, 125-27 (alleging that Defendants use artificial intelligence tools to copy Ms. Menzel's Original Designs)). Based on an in camera inspection, we observe that the Document may carry "great probative value on [this] contested issue[]." Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010). In addition, the Document is the only document Defendants have produced in response to Category 5, making it all the more valuable to Ms. Menzel. See Brook, 2021 WL 5919207, at *6 (finding Rule 26(b)(3)(A) met where disputed document was the "only email" about key event).

Therefore, Defendants have not established that the work product doctrine shields the Document from production, and even if they had, Ms. Menzel has established a substantial need for the Document and inability to obtain the information in it from any other source.

## CONCLUSION

For these reasons, Ms. Menzel's Request is **GRANTED,** and Defendants shall produce the Document to her by **April 14, 2025**.

Dated:   New York, New York
         April 9, 2025                                SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge